## UNITED STATES v. PRICE et al.
### No. 1964.

Circuit Court of Appeals, Tenth Circuit.
April 8, 1940.

Robert H. Fabian, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., William D. Donnelly, Sp. Asst. to the Atty. Gen., and Charles R. Denny, Jr., of Washington, D. C., on the brief), for appellant.

Carl H. Gilbert, of Santa Fe, N. M., and William C. Liedtke, of Tulsa, Okl. (M. W. Hamilton, of Santa Fe, N. M., James B. Diggs, Russell G. Lowe, Redmund S. Cole, C. L. Billings, and James B. Diggs, Jr., all of Tulsa, Okl., and J. D. Atwood and R. L. Malone, Jr., both of Roswell, N. M., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

This is a suit instituted by the United States in January, 1939, against Charles H. Price, Sidney C. Walker and Charles Alves, as trustees, and The Gulf Oil Corporation. It was alleged in the complaint that in December, 1918, Winfred J. May made additional stock-raising homestead entry under the Act of December 29, 1916, 39 Stat. 862, 43 U.S.C.A. § 291 et seq., upon 320 acres of land located in New Mexico; that under such act the entryman was entitled upon compliance with the provisions of law to a patent conveying only the surface of the land, the coal and other minerals being reserved; that in October, 1919, final certificate duly issued, containing an endorsement that the patent to be issued should contain a reservation of the minerals as provided in the act; that in February, 1920, the patent issued, but inadvertently failed to contain such reservation and also failed to make reference to the act under which such minerals were reserved; that the issuance of the patent, to the extent that it purported to convey the minerals, was unauthorized and a nullity; that it clouded the title of the United States to the minerals; that through mesne conveyances the trustees owned title to the surface, and The Gulf Oil Corporation made claim under a purported drilling lease to the mineral rights. Copies of the application, the final certificate and the patent were attached to the complaint and made parts of it. The prayer was that the title of the United States to the mineral rights be confirmed and established, and for general relief. The defendants moved to dismiss the action on the ground (1) that the complaint failed to state a claim upon which relief

could be granted, and (2) that it appeared from the face of the complaint that the action was one to vacate and annul a patent, insofar as it covered the minerals, and that such action was barred by section 8 of the Act of March 3, 1891, 26 Stat. 1093, 43 U.S.C.A. § 1166. The court sustained the motions; the government announced its declination to plead further; and the action was dismissed.

The Act of May 20, 1862, 12 Stat. 392, 43 U.S.C.A. § 161 et seq., commonly called the Original Homestead.Act, provides that any person therein described is authorized to make homestead entry upon not more than 160 acres of unappropriated public land, and that upon compliance with the terms of the act in respect of residence, and otherwise, he shall be entitled to a patent conveying such land. The Act of February 19, 1909, 35 Stat. 639, 43 U.S. C.A. § 218, commonly called the Enlarged Homestead Act, provides that any person who is a qualified entryman under the homestead laws may enter 320 acres or less of nonmineral, nonirrigable, unreserved and unappropriated public land located in certain states, including New Mexico, provided that no land shall be subject to entry thereunder until the Secretary of the Interior shall have designated it as being insusceptible of successful irrigation at a reasonable cost from any known source of water supply. And the Act of December 29, 1916, 39 Stat. 862, 43 U.S.C.A. § 291 et seq., commonly called the Stock-Raising Homestead Act, provides that any person qualified to make entry under the homestead laws may make a stock-raising homestead entry for not to exceed 640 acres of unappropriated unreserved public land in reasonably compact form, provided, however, that the land so entered shall have been designated by the Secretary of the Interior as stock-raising lands; that the Secretary shall designate as stock-raising lands subject to entry, lands which in his opinion are chiefly valuable for grazing and raising forage crops, which do not contain merchantable timber, which are not susceptible of irrigation from any known source of water supply, and which are of such character that 640 acres are reasonably required for the support of a family; that a former entry of land of such character shall not be a bar to the entry of a tract within a radius of twenty miles from the former entry, which together with the former tract shall not exceed 640 acres; and that all entries made and patents issued under such act shall be subject to and contain a reservation to the United States of all coal and other minerals in the lands entered and patented. Thus patents issued under the original act and those issued under the enlarged act convey the minerals. But not so with those issued under the stock-raising act. Entries made and patents issued under it shall be subject to and contain a reservation of the minerals.

The government does not contend that this patent should be annulled or modified, or that a trust should be impressed upon the mineral rights. Its contention, stated in the court below and renewed here, is that the patent should be construed as not having conveyed the minerals. It is urged that the application to make entry, the final certificate, and other data in the General Land Office showing that the entryman had exhausted all of his homestead rights except under the stock-raising act, all disclose an intention to proceed and acquire title under that act; that the terms of the act with which a patentee complies and under which he intends to acquire title governs, even though the patent contains provisions derived from another statute; and that therefore the terms of the stock-raising act reserving the mineral rights must prevail over the recitals contained in the patent. It is from that basic standpoint that reversal of the judgment is urged. But can the court in a case of this kind go behind the patent and look to the antecedent proceedings on which it is founded? In United States v. Hemmer, 241 U.S. 379, 36 S.Ct. 659, 60 L. Ed. 1055, the entryman was a Sioux Indian. His entry was made under the Act of March 3, 1875, 18 Stat. 402, § 15, 43 U.S.C.A. § 189 which provides that land acquired under it shall not be subject to alienation or encumbrance for a period of five years from the date of the patent. Final proof was made after the Act of July 4, 1884, 23 Stat. 76, became effective. It provides that all patents issued under its terms shall be of the legal effect and declare that the United States will hold the land in trust for a period of twenty-five years. The patent inadvertently recited that the land should be inalienable for a period of twenty years, as provided in the Act of January 18, 1881, 21 Stat. 315. That act applied only to Winnebagoes, and had no reference to other Indians. The question presented was whether the Act of 1884 superseded the Act of

1875. It was held that both acts were in force and effect, that since the patent did not disclose upon its face that it was issued under either, resort could be had to the antecedent proceedings for the purpose of determining the question, and that since the entry was made under the earlier act and nothing appeared to indicate an intention to make final proof and secure a patent under the latter the first controlled and the trust period was five years. In United States v. Corporation of the President, Etc., 10 Cir., 101 F.2d 156, a similar situation was presented as to some of the lands. In United States v. Joyce, 8 Cir., 240 F. 610, the entryman was a Chippewa Indian. He made entry upon public lands under the Act of 1884, supra. Instead of the patent being issued under that act, containing a trust period of twenty-five years, it was erroneously issued under the original homestead act, supra, and did not contain any restriction against alienation. The court said that the defendants were charged with notice of the restrictions against alienation, and resort was had to the proceedings leading up to the issuance of the patent; but in effect the court merely enforced a statutory prohibition against alienation of title by an Indian—restriction personal to the entryman, not a limitation of his estate in the land.

But officers of the land department are required in the course of their duties to determine many preliminary questions leading up to the issue of patents conveying public lands. These include the qualifications of the applicant, the acts performed in respect to residence, cultivation, and improvements, the nature of the land, and whether it is of the class which is subject to entry. And when acting within the scope of their jurisdiction, the determination made by such officers of questions of fact is conclusive in a judicial proceeding in which the patent is collaterally questioned. A patent, regular on its face and issued in a case in which the land department has jurisdiction, constitutes an implied finding of every fact which is made a prerequisite to its issue; and upon collateral attack, a court cannot go behind it and look to the antecedent proceedings on which it is founded. St. Louis Smelting Co. v. Kemp, 104 U.S. 636, 26 L.Ed. 875; Steel v. Smelting Co., 106 U.S. 447, 1 S. Ct. 389, 27 L.Ed. 226; Burke v. Southern Pacific R. R. Co., 234 U.S. 669, 34 S.Ct. 907, 58 L.Ed. 1527; Dickson v. Luck Land Co., 242 U.S. 371, 37 S.Ct. 167, 61 L.Ed. 371; United States v. Corporation of the President, Etc., supra; Peabody Gold Min. Co. v. Gold Hill Min. Co., 9 Cir., 111 F. 817; United States v. Winona & St. P. R. Co., 8 Cir., 67 F. 948, affirmed, 165 U.S. 463, 17 S.Ct. 368, 41 L.Ed. 789; Proctor v. Painter, 9 Cir., 15 F.2d 974.

The lands in question here had been classified and designated as subject to homestead entry under the enlarged homestead act and also under the stock-raising act. It was disposable under either. It was within the jurisdiction of the land department, of which the Secretary of the Interior is the supervising officer, to accept and approve an entry and final proof under either act; and if under the former a patent would issue in routine without reservation of the mineral rights, but if under the latter it would issue with reservation. It issued without any reservation, and it appeared on its face to convey the entire estate, including the minerals. It was similar in form to patents issued upon entries made under the enlarged homestead act. It recited in substance that it was issued under the original homestead act, and all acts supplemental thereto; and it did not make any specific reference to the stock-raising act. Both the enlarged act and the stock-raising act are supplemental to the original act. Either came within the general recital contained in the patent. Neither was excluded. The patent conformed in form and substance to patents issued pursuant to entries made under the enlarged act, and it failed to contain anything which indicated or suggested an intention or purpose to issue it under the stock-raising act as distinguished from the enlarged act. Moreover, the failure to contain a reservation of the mineral rights was in harmony with the enlarged act but in wide departure from the stock-raising act. In view of the fact that the land was subject to entry, final proof and patent under either act, it seems clear that in a case of this kind—not to annul or modify the patent which is regular on its face and contains no reservation, or to impress a trust upon the minerals, but to construe the patent as not having conveyed the minerals—the court cannot go behind the patent and look to the antecedent proceedings on which it was founded for the purpose of determining that the minerals were reserved under the provisions of the stock-raising act.

Where officers of the land department are induced by false proof to issue a patent, or where a patent is issued fraudulently or through inadvertence, an appropriate action seasonably instituted will lie to cancel it and regain title. Diamond Coal Co. v. United States, 233 U.S. 236, 34 S.Ct. 507, 58 L.Ed. 936; Burke v. Southern Pacific R. R. Co., supra. But no such case is presented here.

The judgment is affirmed.