190 So.2d 309 (1966)
Mariam V. Katiba COOK and Audrey M. Katiba, Petitioners,
v.
J.J. KATIBA and Katiba Holding Company, a Florida Corporation, Respondents.
No. 35137.
Supreme Court of Florida.
September 21, 1966.
Rehearing Denied October 19, 1966.
*310 Willard Ayres of Greene, Ayres, Swigert & Cluster, Ocala, for petitioners.
Sturgis & Ritter, Ocala, for respondents.
ERVIN, Justice.
This is a petition for writ of certiorari by Audrey M. Katiba and Mariam V. Katiba Cook, her daughter, the sole remaining heirs at law of A.J. Katiba, deceased, to review a decision of the District Court of Appeal, First District, in Cook v. Katiba, 182 So.2d 454, where in a suit to quiet title it was adjudged that Respondent J.J. Katiba was the owner of an undivided one-half interest in a parcel of real estate situated in Marion County, and Petitioners were adjudged to be the owners of the remaining undivided one-half interest therein.
Petitioners contend that we have jurisdiction because of conflict between the instant decision of the District Court of Appeal, First District, and a decision of this Court relating to the same principle of law (Trustees of Internal Improvement Fund v. Lobean, Fla., 127 So.2d 98). We find conflict and accept jurisdiction pursuant to Article V, Section 4, Florida Constitution, F.S.A.
It is the basic contention of the Petitioners that the District Court applied to the evidence an incorrect principle relating to the law of estoppel by deed. The facts set forth by the District Court are as follows: (supra, 182 So.2d at p. 455)
"* * * In the year 1921 Assid [Assad] J. Katiba, brother of appellee, purchased an undivided one-half interest in the property involved in this proceeding. In order to avoid his interest being subjected to the claim of a creditor, he arranged for title to the property to be conveyed to his sister, Wardie Katiba, who was then a citizen and resident of Syria. In the year 1923 Assid J. Katiba purchased the remaining undivided one-half interest in the subject property, and in furtherance of his plan to avoid subjecting his property to the claims of his creditors, he arranged for this interest to be conveyed to his brother, the appellee herein. This plan was consummated with the full knowledge and pursuant to the agreement *311 of both brothers. Although both Assid J. Katiba and appellee resided upon and farmed the parcel in question, appellee left the land in 1926 and never thereafter returned to live upon it or assist in its development.
"Assid J. Katiba remained on the property and in 1929 married one of the appellants, Audrey M. Katiba. As a result of this marriage there was born the remaining appellant, Mariam V. Katiba Cook. Although the evidence is conflicting with respect to the extent to which appellee made financial contributions to the development of the property and retirement of the purchase money mortgage thereon, the evidence indicates that such participation, at best, was slight compared to the contributions made by Assid J. Katiba and the appellant members of his family.
"In October of 1942 Assid Katiba requested of and received from appellee a deed of conveyance. This deed described several parcels of land in which appellee owned the entire interest as well as the parcel involved in this proceeding, title to which he held only an undivided one-half interest under the circumstances hereinabove related. The deed was one of bargain and sale containing no limitations as to the estate conveyed, no covenants, warranties, claim of title or restrictions. This deed was duly recorded in the records of Marion County. Thereafter, Assid Katiba and his family continued to live upon and farm the land in question, paying taxes assessed thereon, paying the outstanding purchase money mortgage, claiming and receiving homestead tax exemption on an allowable portion thereof.

"Assid Katiba's sister, Wardie Katiba, to whom an undivided one-half interest to the land was conveyed in 1921, subsequently moved with her family to South America where she died. Several years prior to his death Assid J. Katiba made a trip to South America for the purpose, among others, of procuring from the heirs of his deceased sister a deed conveying to him whatever interest they claimed in the subject lands but was unsuccessful in this mission.
"Assid Katiba died in 1956 and his brother, Abdullah Katiba who served as executor of his estate, urged the appellant Mariam V. Katiba Cook to go to South America for the purpose of acquiring the interest of Wardie Katiba's heirs in the property involved herein. Such suggestion was rejected by appellant.
"On January 27, 1959, this action was commenced by complaint in chancery in which it was prayed that appellants' title to the entire interest in the land involved in this proceeding be quieted and confirmed as against any claim or demand which may be asserted by the heirs of Wardie Katiba to whom the undivided one-half interest had been conveyed in 1921. Shortly after commencement of this action appellee was successful in procuring from the defendant heirs of Wardie Katiba a deed conveying to him the undivided one-half interest which they held in the farm property. The complaint was then amended by dismissing the Wardie Katiba heirs as parties defendant and joining appellee as defendant with respect to the issues drawn by the complaint." [Emphasis supplied.]
At this point we shall focus our attention on the issues confronting us in this cause: Whether the District Court has correctly applied either the principles of estoppel by deed or of equitable estoppel. After thorough analysis and study we find that we do not agree with the result reached herein by the District Court. We do not believe that the pertinent principles and language of this court in Lobean, supra, have been properly utilized and applied.
In Lobean we discussed and defined the doctrines of legal and equitable estoppel as follows (127 So.2d at page 102):
"[3, 4] Legal estoppel or estoppel by deed is defined as a bar which precludes a party *312 to a deed and his privies from asserting as against others and their privies any right or title in derogation of the deed, or from denying the truth of any material fact asserted therein. In other words, legal estoppel contemplates that if I execute a deed purporting to convey an estate or land which I do not own or one that is larger than I own and I later acquire such estate or land, then the subsequently acquired land or estate will by estoppel pass to my grantee. [Emphasis supplied.]
* * * * * *
"[6, 7] Equitable estoppel as applied to land titles is a different thing. It depends on the conduct of the parties for its efficacy. It is not concerned with the language of the instrument and may actually deny the legal effect of the deed. In Florida Land Investment Co. v. Williams, 1928, 98 Fla. 1258, 116 So. 642, 643, this court said:
`An equitable estoppel, as affecting land titles, is a doctrine by which a party is prevented from setting up his legal title because he has through his acts, words, or silence led another to take a position in which the assertion of the legal title would be contrary to equity and good conscience.'"
We note, and the District Court stated, that the deed herein from J.J. Katiba to Assad Katiba described several parcels of land in which respondent owned the entire interest, as well as the parcel involved in this proceeding, title to which he held only an undivided one-half interest. Nor should the factual setting and conduct of the parties in the case at bar be overlooked. Respondent's cause is not aided by the fact that he was not in an arm's length relationship with petitioners, nor could he be classified as a bona fide purchaser from Wardie's heirs without knowledge.
The relationship of Assad Katiba and his heirs and respondent J.J. Katiba should be weighed with the following facts in mind: (1) Possession of the parcel in issue by petitioners for more than thirty years; (2) payment by petitioners of purchase money mortgage representing the bulk of the purchase price over a period of more than twenty-five years; (3) claim of homestead on a portion of the parcel by Assad from 1921 until his death; and (4) payment of taxes on the parcel by petitioners for more than thirty years. For these facts, see page 506 of Cook v. Katiba (Fla.App. 1963), 152 So.2d 504, in which the District Court held petitioners' complaint stated a cause of action. These facts closely approximate the facts in Daniell v. Sherrill (Fla.) 48 So.2d 736, 23 A.L.R.2d 1410, which resulted in estoppel. These facts, all clearly known to J.J. Katiba, the respondent, when combined with the significant pronouncements in Lobean regarding the actual language of the instrument, are potent weapons in the petitioners' arsenal of transcendent equities and we find them controlling.
Significant is the fact that from October, 1942, forward, Assad J. Katiba and petitioners have had possession and color of title to the parcel of land in issue by virtue of said deed executed by J.J. Katiba. This title status stood undisturbed by any claim of J.J. Katiba from 1942 to 1959. However, in 1959, J.J. Katiba procured the deed covering an undivided one-half interest in the parcel from Wardie's heirs and therefrom asserted his adverse claim to petitioners' title. But at all relevant times, J.J. Katiba knew that the titles he and his sister Wardie received at the instance of Assad constituted only naked legal title to the parcel which they held in resulting trust for Assad. He was in pari delicto with his brother and Wardie insofar as any intent to defraud creditors was involved in the original transactions. J.J. Katiba was at no time an innocent purchaser from Wardie's heirs. The reliance placed by Assad upon his brother J.J. Katiba's deed of 1942 resulted in Assad and his family over a long period of years treating the parcel as part of their homestead property, paying off the mortgage thereon and keeping the taxes paid. This *313 reliance we conclude equitably estops J.J. Katiba from thereafter seeking to avoid the effect of his 1942 deed through an after acquired title obtained from the very source which he knew was held in trust for his brother, Assad.
Where the grantor's knowledge was as great as the grantee's he can not rely on such knowledge of the grantee to avoid being estopped by his deed. (31 C.J.S. Estoppel § 21, at 312.)
The factual situation above recited results in this case being governed by the principles of estoppel appearing in Lobean and in the earlier case of Daniell v. Sherrill (Fla.), supra.
We note that the District Court in Cook v. Katiba, 152 So.2d 504, points out that in Daniell v. Sherrill, supra, "* * * the Supreme Court quoted with approval from many authorities the principle of law that a title acquired by a grantor subsequent to conveyance will inure to the benefit of his grantee even though covenants of warranty are not included in the deed." (Text 506 of 152 So.2d.)
In all probability, equity would not have lent its aid in compelling J.J. Katiba to execute the deed to Assad in 1942 because the title placed in him was in furtherance of a design to defraud Assad's creditors (24 Am.Jur., pp. 267, et seq.); nevertheless, where a transferee voluntarily restores property to the transferror, the legal title and equitable ownership becomes reunited and as against the transferee the reconveyance is valid and effectual. See 24 Am. Jur., p. 295.
F.S. Section 95.23, F.S.A. the twenty-year statute rendering recorded deeds indefeasible after the lapse of twenty years, has no application in the instant case. The legal and equitable estoppel arising from J.J. Katiba's 1942 deed is not avoided by his procurement in 1959 of the deed from Wardie's heirs on the ground the title of Wardie had become indefeasible by virtue of said statute. Respondent was estopped by his 1942 deed and § 95.23 does not relieve him from the consequences flowing from the execution of said deed.
Thus, for the reasons heretofore stated, we find the decision herein of the District Court of Appeal, First District erroneous and do accordingly quash and reverse the same.
It is so ordered.
THOMAS, ROBERTS and CALDWELL, JJ., concur.
THORNAL, C.J., dissents with opinion.
THORNAL, Chief Justice, (dissenting):
It is my view that the whole transaction was initially infected with fraud and that equity should leave the parties where it finds them.