867 P.2d 1220

**Martin GONZALES, Lucille M. Gonzales and Angela Benavidez, Plaintiffs–Appellants,**

v.

**Cipriano GONZALES and Celia Gonzales, his wife, and Kimball R. Udall, Conservator of the Estate of Gertrudes Gonzales, an Incompetent Person, Defendants–Appellees.**

No. 13189.

Court of Appeals of New Mexico.

Dec. 20, 1993.

Donaldo A. Martinez, Las Vegas, for plaintiffs-appellants.

John F. Kennedy, Simons, Cuddy & Friedman, Santa Fe, for defendants-appellees.

## OPINION

MINZNER, Chief Judge.

Plaintiffs originally brought an action in district court to partition lands located in both San Miguel County and Santa Fe County. They now appeal the district court's decision denying their claims to a tract of land located in San Miguel County (the La Cueva tract) and dismissing for lack of venue their claims to a tract located in Santa Fe County (the Rowe Mesa tract). We affirm the district court's decision granting Defendants' motion for summary judgment regarding the claims of Plaintiffs Martin and Lucille Gonzales to the La Cueva tract. We reverse the district court's decision regarding the claim of Plaintiff Angela Benavidez (Benavidez), daughter of Plaintiff Lucille Gonzales, to the La Cueva tract, and remand for further proceedings. We therefore affirm in part and reverse in part the order granting summary judgment. In addition, we affirm the district court's order dismissing Plaintiffs' claims to the Rowe Mesa tract.

We first address Plaintiffs' motion to supplement the record with records of two other judicial proceedings. Previously, on separate motions by the parties, we supplemented the record on appeal with copies of written arguments made to the district court. Attached to the written arguments made to the trial court were various documents, including copies of portions of records of the other judicial proceedings that Plaintiffs wish us to consider. These documents are treated as included within the copies of the written arguments, since both were before the district court when it ruled. To the extent that Plaintiffs' motion to supplement the record includes these documents, the motion is moot. Because it does not appear that any other portion of these records was before the district court, we otherwise deny Plaintiffs' motion.

## I.

### SUMMARY JUDGMENT (THE LA CUEVA TRACT)

The district court granted Defendants' motion for summary judgment on the basis of a

1987 deed to Defendants Cipriano and Celia Gonzales from Defendant Kimball R. Udall as conservator of the property of Gertrudes Gonzales, the mother of Plaintiffs Martin and Lucille Gonzales. Gertrudes and her husband, Tranquilino, who died in 1971, were named in a United States land patent issued on June 1, 1936, conveying the La Cueva tract. The patent grants the land to "Tranquilino Gonzales and Gertrudes R. Gonzales and to their heirs and assigns forever; with the proviso in said Act [Pueblo Lands Act, ch. 331, 43 Stat. 636 (1924) ] expressed that this patent shall have the effect only of a relinquishment by the United States of America and the Indians of said Pueblo." Because Gertrudes and Tranquilino were married in 1928, and there is a statutory presumption that property acquired by either husband and wife or both is presumed to be community property, the district court apparently concluded that they acquired the land in 1936 as community property. *See* NMSA 1978, § 40–3–12(A) (Repl.Pamp.1989); *cf.* NMSA 1929, § 68–401. In that event, when Tranquilino died intestate, Gertrudes became sole owner. *See* NMSA 1953, § 29–1–9 (Supp.1961).

Plaintiffs Martin and Lucille Gonzales claim title to the La Cueva tract on the basis that the title acquired by the patent actually had its inception prior to 1928, and thus under New Mexico law should have been characterized as separate property belonging to Tranquilino. *See Lucas v. Lucas,* 95 N.M. 283, 284, 621 P.2d 500, 501 (1980) ("Property in New Mexico takes its status as community or separate property at the time and by the manner of its acquisition."); *see also Hollingsworth v. Hicks,* 57 N.M. 336, 343–44, 258 P.2d 724, 729–30 (1953) (discussing inception of title). As children of Tranquilino and Gertrudes, they claim that Gertrudes inherited only a one-quarter interest, while they were entitled to a share of the remaining three-quarters. *See* NMSA 1953, § 29–1–10. Defendants contend, and we agree, that Plaintiffs' argument that the La Cueva tract was Tranquilino's separate property requires us to "go behind [the patent] and look to the antecedent proceedings on which it is founded," contrary to Supreme Court precedent. *See Bustamante v. Sena,* 92 N.M. 72, 74, 582 P.2d 1285, 1287 (1978).

Benavidez claims Gertrudes's interest in the La Cueva property on the basis of a 1981 deed from Gertrudes. Defendants contend, and the district court apparently agreed, that the deed was superseded by a 1984 deed, titled a correction deed, conveying a different parcel to Benavidez, her husband, and her daughter. Plaintiffs in effect contend that Defendants failed to make a prima facie showing that they were entitled to judgment as a matter of law under SCRA 1986, 1–056 (Repl.1992). We agree. We discuss each claim separately below.

A.  *Claim of Martin and Lucille Gonzales*

■ In Felix Cohen's *Handbook of Federal Indian Law* at 390 (1952; 1971 rev.), he describes the Act as follows:

The Pueblo Lands Act established a "Pueblo Lands Board" consisting of the Secretary of the Interior, the Attorney General, and a third member appointed by the President. This board was, by section 2 of the act, given the duty of determining "the exterior boundaries of any land granted or confirmed to the Pueblo Indians of New Mexico by any authority of the United States of America, or any prior sovereignty, or acquired by said Indians as a community by purchase or otherwise," and to determine the status of all lands within such boundaries, subject to the requirement that a finding that Indian title had been extinguished required a unanimous vote of the board.

The Attorney General was directed, in section 3 of the Pueblo Lands Act, to bring suit to quiet title to all lands listed as pueblo lands by the Lands Board.

Section 4 of the act provided that non-Indian claimants, in order to substantiate their claims, must demonstrate either (a) continuous adverse possession under color of title since January 6, 1902, supported by

payment of taxes on the land, or (*b* ) continuous adverse possession since March 16, 1889, supported by payment of taxes, but without color of title.

The Act recognized that title to land within a land grant originally made to a pueblo could be established by a non-Indian claimant through adverse possession.[1] Plaintiffs argue that because the period of possession required by the Act to extinguish Indian title predated the year Gertrudes and Tranquilino were married, then the title that resulted from the patent must be characterized as having its inception prior to marriage and thus to be title to separate property. *See Lucas,* 95 N.M. at 284, 621 P.2d at 501. We disagree. We recognize that the Act required a showing of possession from either 1902 (with color of title) or from 1899 (without color of title) to the date of the Act (1924). 43 Stat. 636, 637 (ch. 331, § 4(a), (b)). That is not to say, however, that a claimant was required to show his or her own possession from 1902 or 1899 to 1924. Rather, the statute permitted showings by claimants "in themselves, their ancestors, grantors, privies, or predecessors in interest." *Id.* at § 4(a).

Plaintiffs provided no evidence that Tranquilino himself (as opposed to his family) had an ownership interest prior to his marriage to Gertrudes. As Defendants note, the survey made when the claim at issue in this case was investigated shows both Gertrudes and Tranquilino as claimants. This indicates that both of them asserted a right to succeed to the interest acquired by members of Tranquilino's family, as well as Tranquilino himself. That right might have been based on joint possession subsequent to marriage, a gift from Tranquilino's family to Tranquilino and Gertrudes, or a gift from Tranquilino to Gertrudes. Therefore, it is possible that Tranquilino acquired his interest after his marriage.

Even if there were evidence that Tranquilino had a pre-marriage ownership interest in

the property, generally "a court cannot go behind [a patent] and look to the antecedent proceedings on which it is founded." *Busta-mante,* 92 N.M. at 74, 582 P.2d at 1287 (following *United States v. Price,* 111 F.2d 206 (10th Cir.1940)). Barring an allegation of fraud, mistake, or that the patent is "not regular on its face," a patent is presumptive evidence that every prerequisite has been met to its proper issuance. *Id.,* 92 N.M. at 73–74, 582 P.2d at 1286–87 (quoting *Martinez v. Mundy,* 61 N.M. 87, 89, 295 P.2d 209, 211 (1956), *overruled on other grounds by Evans Fin. Corp. v. Strasser,* 99 N.M. 788, 791, 664 P.2d 986, 989 (1983)).

■ Plaintiffs argue that the patent "is not 'regular on its face'" because it was "issued to a man and his wife, when only the man [was] entitled to it." We disagree. The only circumstance in which a patent is not regular on its face is when the patent does not conform, in form and substance, to the statutory requirements of the legislation that authorizes the agency to issue such a patent. *Price,* 111 F.2d at 208. Plaintiffs have not shown any limitation on the Board's ability to issue a patent in two names or to recognize the manner in which two people wished to acquire title. Plaintiffs concede this point.

Plaintiffs have argued that titles secured under the Pueblo Lands Act differ from those secured under other legislation. They suggest that the Act had limited effect because it was intended to relinquish only Indian claims. *Bustamante,* however, controls on this point. Just as in this case, *Bustamante* involved a 1936 patent to land within the Pecos Grant pursuant to the Pueblo Lands Act.

In *Price,* the Tenth Circuit considered whether a certain patent issued without a reservation of mineral rights in the United States was regular on its face. The United States had instituted the underlying proceed-

---

1. In so providing, Congress made a decision that had been hotly contested because of the significance it held for Indian claimants. *See* G. Emlen Hall, *Four Leagues of Pecos: A Legal History of the Pecos Grant, 1800–1933,* at 221–44 (1984)

[hereinafter Hall, *Four Leagues of Pecos* ]. With respect to the Pecos grant, the statute would largely limit Indian claimants to recovering money as compensation, rather than recovery of the land in question. *Id.*

ing, claiming that a patent it had issued under a homestead act did not convey the land's mineral rights, even though there was no clause reserving such rights. There were two enabling acts pertinent to the suit: an "enlarged" homestead act, which allowed for the issuance of patents without reserving mineral rights, and a "stock-raising" homestead act, which required that patents issued under its authority reserve mineral rights in the United States. *Id.*, 111 F.2d at 207. The patent at issue could have been issued under either act. *Id.* at 208. The Tenth Circuit explained that the patent in *Price* was similar in form and substance to other patents issued under the enlarged act, and that it was issued pursuant to the jurisdiction of the agency that issued patents under the enlarged act. *Id.* Holding that such a patent was regular on its face, the Court of Appeals refused to look behind the patent and consider whether the patent was actually issued under the stock-raising act. *Id.* The Court then affirmed the district court's ruling that the patent had conveyed the mineral rights to the defendants.

Similarly, we think the district court in this case was not authorized to determine that the patent should have been issued solely to Tranquilino. Rather, the court was obligated to accept the patent as issued to both Tranquilino and Gertrudes. Plaintiffs' argument requires us to look to the proceedings on which the patent was founded, contrary to *Bustamante.*

Consequently, Plaintiffs Martin and Lucille Gonzales could establish better title or a claim to better title only if they could show that the La Cueva tract was subsequently transmuted into Tranquilino's separate property. They concede that there was no subsequent transmutation. In the absence of evidence of transmutation, when Tranquilino died intestate, the La Cueva tract belonged solely to Gertrudes. *See* NMSA 1953, § 29-1-9. Plaintiffs suggested at oral argument that the statute controlling intestate succession when Tranquilino died provided otherwise. Again, we disagree. *See* 1961 N.M.Laws, ch. 12, § 1; *see also* 1973 N.M.Laws, ch. 276, § 2. Plaintiffs also have suggested on appeal that Tranquilino and Gertrudes acquired title as tenants in common, rather than as community property. That argument was not raised before the district court, and we do not consider it.[2]

We therefore hold that the district court properly granted Defendants' motion for summary judgment regarding Plaintiffs Martin and Lucille Gonzales, whose claim depends on whether Gertrudes had good title to the La Cueva tract upon her husband's death. We next consider whether summary judgment was proper regarding Benavidez, to whom Gertrudes had deeded the tract in 1981.

### B. *Claim of Angela Benavidez*

Gertrudes conveyed the La Cueva tract, an improved lot containing 1.615 acres, located in San Miguel County, to Benavidez by deed dated August 10, 1981. The deed was recorded in San Miguel County Book of Deeds 229, at page 2335. Plaintiffs contend, and Defendants do not deny, that Gertrudes continued to live in the house on the La Cueva tract until she became ill. Plaintiffs suggest that Gertrudes and Angela anticipated "that Angela was to defer occupancy while her grandmother lived there." Plaintiffs also contend that on January 27, 1984, Plaintiff Martin Gonzales filed a petition seeking the appointment of a conservator for Gertrudes's estate, and that he and Plaintiff Lucille Gon-

---

**2.** *But see* NMSA 1929, § 65–401. *See also August v. Tillian,* 51 N.M. 74, 178 P.2d 590 (1947), *superseded by statute as stated in Swink v. Fingado,* 115 N.M. 275, 280, 850 P.2d 978, 983 (1993). In that case, the [Supreme] Court held that where a husband and wife owned property in equal shares as tenants in common, the husband's interest was community property in which the wife had a one-half interest, while her interest was, under the unequal presumptions contained in the former [statute], now repealed, separate property in which the husband had no interest. [Footnote omitted.]
Anne K. Bingaman, *The Community Property Act of 1973: A Commentary and Quasi–Legislative History,* 5 N.M.L.Rev. 1, 7 (1974). *See also id.* at 46 n. 87.

zales were appointed co-conservators on April 9. Defendants note that these matters are not of record in the present case; but they do not dispute the accuracy of Plaintiffs' factual contentions about the conservatorship, although they deny that there is evidence of Gertrudes's incompetency prior to April.

The parties agree that on February 27, 1984, Gertrudes signed a deed conveying a one-acre, unimproved lot, located in San Miguel County, to Benavidez, her husband, and her daughter. The deed was recorded on March 6, 1984; it contains a statement, across the top of the page, as follows: "Correction of Deed dated August 10, 1981. Recorded in Book 229 of Deed[s] 2335." Defendants offered affidavit evidence that Benavidez and her family took possession of the one-acre lot that now includes a house, and that taxes are being assessed in the names of the grantees under the 1984 deed.

On April 14, 1987, Udall was appointed to succeed Plaintiffs Martin and Lucille Gonzales as co-conservators of Gertrudes's estate. On April 30, pursuant to motion for authorization to sell real property and after a hearing, the district court judge presiding over the conservatorship proceedings ordered the sale of the La Cueva property. Udall subsequently issued the 1987 deed to Defendants. Defendants offered affidavit evidence that they paid $24,000 to the conservator, and subsequently spent approximately $18,000 in repairs and improvements to the residence on the La Cueva tract. In June, Plaintiff Martin Gonzales filed an inventory of Gertrudes's estate that included the La Cueva tract.

Defendants moved for summary judgment on the basis of the correction deed and evidence that Benavidez had accepted it. In their written opposition to the motion for summary judgment, Plaintiffs denied Gertrudes's competency at the time she executed the correction deed and also disputed its efficacy to supersede the prior deed, because the correction deed included two additional grantees. On appeal, they contend that the

trial court erred in granting summary judgment because "the 'correction deed' is patently void, and, at best, only gives rise to a possible equitable cause for recission [sic]." In effect, Plaintiffs contend on appeal that in the absence of a deed from Benavidez to Gertrudes reconveying the La Cueva tract or grounds to support an action for rescission, Benavidez has title to the La Cueva tract superior to that of Defendants. Plaintiffs note that none of the cases on which Defendants rely involved the substitution of "an entirely different tract of land" for the tract included in the first deed. They also argue that the phrase describing the second deed as a correction deed appears to be an addition to the deed after the rest of it had been typed.

We first address the contentions that Gertrudes was incompetent when she executed the 1984 deed, as well as the suggestion that the phrase describing it as a correction deed was added after the rest of it had been drafted and Gertrudes had signed it. The argument that Gertrudes was incompetent was not supported by any evidence offered in opposition to Defendants' showing. Plaintiffs asked the district court to take judicial notice of an incompetency proceeding but did not tender the necessary records. The argument that the phrase was a late addition was not raised in response to the motion for summary judgment. Although the phrase extends beyond the right-hand margin of the text as well as the formal margin of the form deed, we cannot say that the face of the deed establishes that the phrase was not there when Gertrudes executed it. The typeface appears to be the same as the balance of the deed. We conclude that neither of these arguments is properly before us. See SCRA 1986, 12–216(A) (Repl. 1992).

Plaintiffs' remaining arguments challenge the basis of Defendants' claim that they were entitled to judgment as a matter of law. We agree with much of what Plaintiffs argue as a matter of general legal principle. That is to say, we agree that in gener-

al, once property has been conveyed by deed from the record owner, the person to whom the property has been conveyed owns it. He or she must then reconvey it before the law will recognize another person as having acquired title. That is because the common law Statute of Frauds requires that transfers of real property be in writing. *Cf.* NMSA 1978, § 47–1–5 (Repl.Pamp.1991). The rule applies even to the original grantor. *See Ottomeyer v. Pritchett,* 178 Mo. 160, 77 S.W. 62, 64 (1903) (grantor could not by correction deed or any other act taken solely by himself correct an alleged drafting error in his prior deed). However, there are a number of exceptions to the rule that a valid conveyance of real property requires a writing, *see generally* Dan B. Dobbs, *Handbook on the Law of Remedies* § 11.6, at 749–50 (1973) (discussing reformation of a deed upon oral proof of an error in under- or over-conveyance as an illustration of a remedy available notwithstanding the general rule requiring a writing to transfer real property); and, contrary to Plaintiffs' inference, reformation and rescission are not the only possible remedies. Defendants in effect rely on an exception to the general rule.

■ We agree with Defendants that, as a general proposition, a correction deed may negate a prior conveyance, although correction deeds are more typically used to correct mistakes such as typographical errors in an original deed. 26 C.J.S. *Deeds* § 31 (1956); *see, e.g., Golden v. Hayes,* 277 So.2d 816 (Fla.Dist.Ct.App.1973). In theory, a correction deed sets forth what had been intended in the original deed. *Sartain v. Fidelity Fin. Servs., Inc.,* 116 Idaho 269, 775 P.2d 161, 164 (Ct.App.1989).

■ The theory underlying the use of a correction deed to negate a prior conveyance appears to derive from two distinct but related equitable principles. *See Norman v. State,* 182 Mont. 439, 597 P.2d 715, 718 (1979) (comparing estoppel by deed and by equitable estoppel). *See also* 28 Am.Jur.2d *Estoppel and Waiver* § 4, at 602–03 (1966) (estoppel by deed); § 27, at 627–29 (equitable es-

toppel). Under the principle described as estoppel by deed, one party (or privy) to a deed is precluded "from asserting as against the other party [or privy] any right or title in derogation of the deed, or from denying the truth of any material facts asserted in it." 6A Richard R. Powell, *The Law of Real Property* § 927, at 84–112 to –113 (Patrick J. Rohan, ed., rev. ed. 1992) [hereinafter Powell]. "Equitable estoppel as applied to land titles is a different thing. It depends on the conduct of the parties for its efficacy. It is not concerned with the language of the instrument and may actually deny the legal effect of the deed." *Trustees of Internal Improv. Fund v. Lobean,* 127 So.2d 98, 102 (Fla.1961).

■ Defendants rely on authority in which there was no question, based on the terms of the correction deed, that the parties intended the correction deed to completely supersede the prior deed. *Fertitta v. Bay Shore Dev. Corp.,* 252 Md. 393, 250 A.2d 69, 72 (1969) (correction deed specifically stated that it was " 'in substitution for and in lieu of the [original] deed' "). They have not argued on appeal that Benavidez is estopped to rely on the 1981 deed, but rather that she is estopped to deny that the 1984 deed was valid. Thus, we believe they in fact argued to the trial court and have argued on appeal that they were entitled to summary judgment as a matter of law based on a theory of estoppel by deed. That theory requires us to be able to conclude that acceptance of the correction deed precludes Benavidez from denying the truth of any facts asserted in it. Unlike the correction deed in *Fertitta,* however, the correction deed between Gertrudes and Benavidez is devoid of any statement that expresses the intention of the parties to rescind the previous deed, and it contains no factual assertion that Benavidez's conduct in accepting the deed can be said to affirm, other than that the later deed was intended to change the prior deed in some way. Since there were two additional grantees in the second deed, the grantor's intent in giving it remains unstated and ambiguous.

■ It has been said that "[i]f an action to reform a deed is based on the contention

that the deed, as written, mistakenly fails to reflect the previous agreement of the parties, the previous agreement must be clear, definite and enforceable." 6A Powell, *supra* ¶ 901[3], at 81A–163 to –164. Similarly, an estoppel by deed or similar instrument "can occur only where a party has conveyed a precise or definite legal estate or right, by a solemn assurance, which he will not be permitted to vary or to deny." *Gilmer v. Poindexter*, 51 U.S. (10 How.) 257, 267, 13 L.Ed. 411 (1850). Any other rule would be inconsistent with the requirement that to transfer an interest in land, ordinarily there must be a writing signed by the transferor. *See also* 3 John N. Pomeroy, *A Treatise on Equity Jurisprudence* § 821, at 258 (Spencer W. Symons ed., 5th ed. 1941) [hereinafter Pomeroy] (fraud, actual or constructive, as an essential element of estoppel affecting legal title to land). Thus, we conclude that Defendants failed to make a prima facie showing of their entitlement to summary judgment on the basis of the doctrine of estoppel by deed.

■ There is evidence in the record to suggest that the more general equitable principle applies. That principle, as we have said, depends on the parties' conduct, and in an appropriate case may preclude a party from relying on a deed. *See Trustees of Internal Improv. Fund*, 127 So.2d at 102. The principle has been defined as follows:

> Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person, who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of property, of contract, or of remedy.

3 Pomeroy, *supra* § 804, at 189. Among other things, the doctrine requires evidence of certain conduct by the party to be estopped, reliance by the party seeking the benefit of the principle, and a change of position by that party. *Id.* § 805, at 190–98. If this doctrine applies, Benavidez would be estopped by conduct from asserting her rights under the 1981 deed, rather than from denying the 1984 deed on which Defendants reasonably relied. The authority we have found suggests that the conduct, which may include written representations, should be the equivalent of fraud. *Id.* § 807, at 201–04, § 821, at 258.

In this case, we think that Defendants made a prima facie showing of their reliance on the 1984 deed and their change of position. The La Cueva tract was treated as part of Gertrudes's estate and sold to Defendants by district court order, after which they improved it. Defendants, however, have argued only that Plaintiffs Martin and Lucille Gonzales should be estopped to deny Gertrudes's ownership of the La Cueva tract as a result of their participation in the guardianship proceedings. We need not address the issue of how the doctrine of equitable estoppel applies to Plaintiffs, because their claim to the La Cueva tract depended upon the effect of the patent. That issue we have decided against them.

Benavidez, on the other hand, as a grandchild of Gertrudes, is not necessarily a person to whom notice of the proceedings would have been given, and there is no evidence that she actually participated in the proceedings. Although the deed was recorded prior to the district court order authorizing the sale, Defendants did not claim that they relied on it in purchasing the property. Rather, in moving for summary judgment, Defendant Cipriano Gonzales filed an affidavit that stated "I know the one acre parcel...." We cannot say that Defendants established conduct by Benavidez that entitled them to summary judgment as a matter of law. *Cf. Cook v. Katiba*, 190 So.2d 309 (Fla.1966) (applying the doctrine of estoppel by deed).

Finally, as we have noted, this theory was not the basis of Defendants' argument before the district court. Thus, Plaintiffs were not required to rebut the showing Defendants made under SCRA 1–056. *See Richardson*

*v. Glass,* 114 N.M. 119, 122, 835 P.2d 835, 838 (1992).

For these reasons, we are not persuaded that Defendants established their right to summary judgment as a matter of law. We conclude that there are issues of fact concerning the applicability of the doctrine of equitable estoppel. Therefore, we reverse the order granting Defendants summary judgment on Benavidez's claim to the La Cueva tract and remand for further proceedings not inconsistent with this opinion.

## II.

### VENUE (THE ROWE MESA TRACT)

■ The Rowe Mesa tract is located in Santa Fe County. Plaintiffs contend that the trial court erred in denying their claim to the Rowe Mesa tract for lack of venue because it is contiguous to a tract that is located in part in San Miguel County. We conclude that the trial court's ruling was correct.

NMSA 1978, Section 38–3–1(D) (Cum. Supp.1992) provides as follows:

D. (1) When lands or any interest in lands are the object of any suit in whole or in part, the suit shall be brought in the county where the land or any portion of the land is situate.

(2) Provided that where such lands are located in more than one county and are contiguous, that suit may be brought as to all of the lands in any county in which a portion of the lands is situate, with the same force and effect as though the suit had been prosecuted in each county in which any of the lands are situate. In all such cases in which suit is prosecuted in one county as to contiguous lands in more than one county, notice of lis pendens shall be filed pursuant to Sections 38–1–14 and 38–1–15 NMSA 1987 in each county. For purposes of service of process pursuant to Rule 4 [Rule 1–004] of the Rules of Civil Procedure for the District Courts, any such suit involving contiguous lands located in more than one county shall be deemed pending in each county in which any portion of the land is located from the date of filing of the lis pendens notice.

Plaintiffs have explained that (a) the Rowe Mesa tract was acquired as part of a tract known as the Matias Encinias tract, and (b) the Matias Encinias tract is contiguous to a tract known as the Pablo Dean tract, which lies in both Santa Fe and San Miguel Counties, and after Tranquilino acquired the Matias Encinias and Pablo Dean tracts, he incorporated them into one tract. We conclude from the briefs that the original boundary between the Matias Encinias and Pablo Dean tracts is also in Santa Fe County. We conclude from the complaint that the ownership of the balance of the Matias Encinias tract is not an issue in this lawsuit, although all or part of the Pablo Dean tract appears to have been in dispute at one time between other parties to the lawsuit. Although the Rowe Mesa tract itself is not in fact contiguous to the Pablo Dean tract, but rather is separated from that tract by the balance of the Matias Encinias tract, Plaintiffs contend that their claim to the Rowe Mesa tract may be heard in San Miguel County. We conclude that Plaintiffs' venue argument would require an unintended construction of the statute.

Section 38–3–1(D)(1) is similar to the special venue provision contained in the statute authorizing an action to quiet title. *See* NMSA 1978, § 42–6–1. Both permit an action concerning land to be brought in the county in which the land or any portion of it is located. Similar provisions are fairly common. *See generally* Annotation, *Venue of Action Involving Real Estate Situated in Two or More Counties or Districts,* 169 A.L.R. 1245, 1250–58 (1947).

Section 38–3–1(D)(2) uses the phrase "where such lands are located in more than one county and are contiguous." The phrase used in the first sentence of Section 38–3–1(D)(2) has two requirements: (1) the lands are located in more than one county, and (2) the lands are contiguous. The phrase is substantially repeated twice in the sentences that follow the first one. The repeated

phrase may be less clear than the phrase used in the first sentence, but the repeated phrase is certainly a shorthand statement of the two requirements imposed by the first sentence. Thus, we read Section 38–3–1(D)(2) as requiring that tracts located in different counties be contiguous to one another before an exception to the general venue provision is available. The Rowe Mesa tract and the Pablo Dean tract are clearly not contiguous to each other within the meaning of the statute.

Plaintiff Martin Gonzales's affidavit indicates that the Rowe Mesa tract was part of the Matias Encinias tract at a time when Tranquilino fenced that tract with the Pablo Dean tract. The issue on appeal, however, is whether this case involves contiguous tracts within the meaning of Section 38–3–1(D)(2). Plaintiffs apparently believe that venue would be proper if at some time in the past the Rowe Mesa tract was part of a larger tract which was contiguous to a tract located in part in another county. That approach would be unmanageable. Instead of performing the essentially mechanical task of looking at the legal descriptions of the properties at issue in a lawsuit, the district court would have to conduct an inquiry into the history of the parcels. The much more efficient approach, which is the approach suggested by the language of the statute, is to require the court to look only at the specific pieces of property that are at issue. Because the Rowe Mesa tract lies in Santa Fe County and it is not contiguous to any land that was the object of the suit and that lies in whole or in part in San Miguel County, we do not think that Section 38–3–1(D)(2) is satisfied. *See generally* 77 Am.Jur.2d *Venue* § 13, at 850–51 (1975); *see also* § 10, at 845; 59A Am.Jur.2d *Partition* § 107, at 71 (1987).

## III.

### CONCLUSION

In summary, we hold that the district court properly dismissed Plaintiffs' claims regarding the Rowe Mesa tract. We also hold

that Gertrudes held good title to the La Cueva tract upon Tranquilino's death, and the district court properly granted Defendants summary judgment against Plaintiffs Martin and Lucille Gonzales. We affirm the district court's order dismissing Plaintiffs' claims to the Rowe Mesa tract, and we reverse the order granting summary judgment regarding Benavidez's claim to the La Cueva tract and remand for further proceedings. Benavidez shall recover her appellate costs.

IT IS SO ORDERED.

HARTZ and CHAVEZ, JJ., concur in part and dissent in part.

HARTZ, Judge (concurring in part, dissenting in part).

I join in all of Chief Judge Minzner's opinion except for the discussion under the heading "Claim of Angela Benavidez." I would affirm the summary judgment in favor of Defendants against Angela Benavidez.

The 1984 deed to Benavidez, her husband, and her daughter, contains the notation: "Correction of Deed dated August 10, 1981. Recorded in Book 229 of Deed[s] 2335." The deed being corrected is unambiguously the 1981 deed from Gertrudes to Angela Benavidez. There is no dispute that the grantees of the 1984 deed, including Angela Benavidez, accepted the deed. Neither the Plaintiffs, the majority opinion, nor my own imagination has supplied me with a plausible explanation of what the "Correction of Deed" language could mean other than that the 1984 deed is intended to substitute for the 1981 deed. Therefore, I fail to understand the statement in the majority opinion that "the correction deed between Gertrudes and Benavidez is devoid of any statement that expresses the intention of the parties to rescind the previous deed." I would affirm the summary judgment against Angela Benavidez because the correction deed, which she accepted, estops her from claiming under the 1981 deed.

CHAVEZ, Judge (concurring in part, dissenting in part).

I concur with the reasoning and holding of the majority opinion except for the affir-

'mance of the trial court's dismissal of Plaintiffs' claim to the Rowe Mesa tract for lack of venue. The majority holds that Plaintiffs failed to satisfy Section 38–3–1(D)(2), because the Rowe Mesa tract is not contiguous to a tract that is located in part in San Miguel County. I find the evidence is to the contrary.

First, I disagree that the Rowe Mesa tract should be considered separate from the Matias Encinias tract. Although not entirely clear, it appears that the original tract conveyed by Matias Encinias to Tranquilino consisted of 320 acres. This 320 acres, known as the Matias Encinias tract, included the Rowe Mesa tract. As a consequence, the Rowe Mesa tract is not separated from the Pablo Dean tract. Therefore, Plaintiffs are correct in asserting that Section 38–3–1(D)(2) was satisfied since the Matias Encinias tract is contiguous to the Pablo Dean tract, which lies in part in San Miguel County.

Second, although not argued by the parties, the fact that Tranquilino combined the Pablo Dean tract and the Matias Encinias tract under one fence indicates that he considered these tracts as one. Consequently, the dismissal of Plaintiffs' claim was erroneous, because the requirements of Section 38–3–1(D)(1) have been met, which allows the suit to be brought in the county where the land or any portion of the land is situated. For the above reasons, I respectfully dissent and would hold that venue is proper in San Miguel County.