1999-NMCA-120

988 P.2d 1260

**The SPRINGER GROUP, INC., Thomas J. Springer and Jeanine Springer, Plaintiffs–Appellants/Cross–Appellees,**

v.

**Lorraine WITTELSOHN and Henri Wittelsohn, Defendants-Appellees/Cross-Appellants.**

No. 19,236.

Court of Appeals of New Mexico.

Aug. 6, 1999.

William J. Cooksey, Candyce L. Ferreri, Dubois, Cooksey & Bischoff, P.A., Albuquerque, for Appellants/Cross–Appellees.

Thomas C. Bird, James C. Jacobsen, Keleher & McLeod, P.A., Albuquerque, for Appellees/Cross–Appellants.

*OPINION*

BOSSON, J.

{1} In this suit, a homebuilder seeks damages for a buyer's breach of a home construction contract, and the holder of the note and mortgage on the construction financing seeks foreclosure. We affirm the trial court's decree of foreclosure, including interest accrued, to be paid from the foreclosure sale proceeds. However, we reverse, in part, because of restrictions imposed by the court on the builder's ability to execute upon its judgment and to obtain a deficiency judgment for its damages against the buyer. Finally, we hold that the court erred in categorically denying certain claims for attorney fees. We remand for further proceedings as outlined herein.

## BACKGROUND

{2} The Springer Group, Inc. (Springer Group), is a New Mexico corporation that constructs custom homes according to plans and specifications approved by its customers. On May 19, 1994, the Springer Group entered into a construction purchase agreement (the construction contract) with Lorraine Wittelsohn to construct a home on real property in Placitas, New Mexico, that was owned by her and her husband. The contract price of the house was $321,600. To facilitate construction financing, Lorraine Wittelsohn transferred legal title to the Placitas property to the Springer Group, leaving the Wittelsohns with an equitable interest in the property. Shortly thereafter, the Springer Group obtained a construction loan from a bank in the amount of $250,000, secured by a mortgage on the Placitas property including the planned improvements. The Springer Group was the sole obligor on the note. The value of the property at the time of the transfer was $87,696.95. The Wittelsohns also made a $32,000 down payment on the contract.

{3} Over the next year, the house was substantially completed in compliance with the contract. On June 15, 1995, the scheduled date for closing, the Wittelsohns defaulted and refused to pay the balance of the purchase price. The trial court found that the Wittelsohns' failure to perform was "unexcused, unjustified and in direct breach of the [c]ontract." That finding has not been challenged on appeal. On December 27, 1995, Thomas and Jeanine Springer (the Springers), the sole shareholders of the Springer Group, purchased the construction note and mortgage from the bank for $257,-426.36, including interest. That sum bears interest at 11 ½% per annum (depending upon the prime rate) from December 27, 1995, until the eventual date of payment.

{4} After the default, the Springer Group, as well as the Springers individually, filed suit against the Wittelsohns. The Springer Group sued for breach of the construction contract, seeking compensation for damages suffered because of the breach. The Springers individually, as the bank's assignees, sued to foreclose on the mortgage and thereby to extinguish whatever equitable interest the Wittelsohns retained in the property. The Springers asked the court to order a foreclosure sale of the house, with the proceeds applied to pay the principal and interest they were owed on the note plus attorney fees and other costs of sale.

{5} Following a bench trial, the trial court awarded the Springer Group a judgment against the Wittelsohns in the amount of $306,328.64. That sum included the amount due and owing on the mortgage, the rights to which had been assigned to the Springers by the bank. It also included the sum of $56,328.64, representing the balance the Wittelsohns owed the Springer Group on the construction contract after calculating various offsetting credits. Finally, the court awarded the Springers a judgment of foreclosure, ordering the property to be sold and the proceeds applied as directed by the court.

{6} As part of the judgment, the court allocated the anticipated proceeds from the foreclosure sale according to the following order of priority: (1) payment of all costs and expenses of foreclosure; (2) $257,426.36 to the Springers representing principal and interest on the note to December 27, 1995, plus interest thereafter at 11½% on that amount until the date of sale; (3) $91,289.35 to the Wittelsohns for their equitable interest in the Placitas property; (4) $56,328.64 to the Springer Group for the remainder of its judgment against the Wittelsohns, plus interest on the judgment at 8¾% from June 15, 1995, until the date of sale; and (5) any surplus monies to the Springer Group. Neither party was awarded attorney fees.

{7} As one important part of its award, and this appeal, the court ruled that the Springer Group was not entitled "to a claim or deficiency against [the Wittelsohns] for monies due in any case or proceeding outside of this case." The Wittelsohns' liability to the Springer Group "shall not exceed the amount of ... $91,289.32," representing the Wittelsohns' equitable interest in anticipated proceeds from the foreclosure sale, and most significantly, the Springer Group could not seek a deficiency judgment against the Wittelsohns and their personal assets "outside of [the] case."

{8} At the time of its judgment on January 5, 1998, the court appears to have as-

sumed that the property would sell to a prospective buyer at a price sufficient to satisfy all the parties' claims. However, the house did not sell until October 9, 1998, and for only $405,000, which was not sufficient to satisfy all parties' claims. After the underlying mortgage was paid off, only about $112,200 remained (the net proceeds) which was placed in an interest-bearing account pending resolution of this appeal. The interest on the mortgage owed to the Springers, and on the judgment owed to the Springer Group, has continued to accrue since 1995, such that the amount in escrow will not be sufficient to satisfy all claims.

{9} The Springer Group and the Springers individually appeal the trial court's judgment and decree of foreclosure. They argue three points: (1) the Springer Group should be able to execute on its judgment against the equitable interest of the Wittelsohns in the net proceeds; (2) in the likely event the net proceeds prove insufficient, the Springer Group is entitled to a personal judgment for any unpaid deficiency which can be collected against the Wittelsohns' personal assets; and (3) the Springers are entitled to recover from the proceeds of sale reimbursement for attorneys' fees reasonably incurred in the mortgage foreclosure.

{10} In response and on cross appeal, the Wittelsohns argue that, at the core of this case, foreclosure was inappropriate because they were never parties to the note and mortgage. The Wittelsohns request that this Court reverse the decree of foreclosure and remand for an appropriate remedy under the contract limited primarily to damages. The Wittelsohns also seek an accounting for their equitable interest in the property along with a proportionate allocation of their share of the appreciation of that investment. Because the propriety of the foreclosure decree could affect the remaining issues, we address the Wittelsohns' protest first.

## DISCUSSION

### The Trial Court Properly Ordered Foreclosure

■ {11} The Wittelsohns argue that the trial court erred as a matter of law when it ordered a foreclosure sale of the property. They correctly point out that the construction contract, which they breached, was nev-

er secured by a mortgage. They emphasize, again correctly, that they were never parties to the note and mortgage that the Springer Group executed to obtain construction financing. Although we do not disagree with each of these factual contentions, we are not persuaded that the Wittelsohns have accurately characterized the court's basis for decreeing foreclosure in this case.

{12} The trial court issued a Judgment and Decree of Foreclosure in favor of the Springers, as assignees and obligees of the banks' interest in the note and mortgage executed by the Springer Group. The court never confused foreclosure as a remedy for breach of the construction contract. The note was unquestionably in default, and the Springer Group, as obligor and legal titleholder, did not oppose foreclosure. Thus, foreclosure was not contested by either party to the note and mortgage. The Wittelsohns have not cited any legal authority that would give them the right to challenge a foreclosure on a note and mortgage to which, as they concede, they were never parties. *See* Rule 12–213 NMRA 1999.

■ {13} Contrary to what the Wittelsohns argue before this Court, the record is clear that they were made parties to the foreclosure for two, limited reasons: (1) to make their equitable interest in the property, calculated by the court at $91,289.35, "subject to elimination in this foreclosure action," the same as any other lien interest that might be in competition with the first mortgagee; and (2) to accord redemption privileges and purchase rights to the Wittelsohns as "equitable lien holders." Limited joinder of the Wittelsohns for this purpose was appropriate and did not make them personally liable for the mortgage indebtedness, nor have the Springers made any such claim. *See* Rule 1–019 NMRA 1999; *see also* 4 Richard R. Powell, *Powell on Real Property* § 37.41, at 37–276 (1999) (stating the rights of a lienor omitted from a foreclosure action remain unaffected). The Wittelsohns' exposure under the foreclosure proceedings, as opposed to the Springer Group's claim against them for breach of the construction contract, was limited to the loss of their equitable lien on the house. We perceive no error or unfairness in the trial

court ordering foreclosure and awarding the Springers, as secured creditors, a priority in the proceeds.

{14}  Moreover, we note that in the trial court the Wittelsohns never seriously contested the court's right to sell the property. The Wittelsohns actually urged a sale of the property, stating before the trial court that, "an honest attempt at a marketing of the house would be the best for all parties and then they would all be bound by the Special Master, and that's what we [the Wittelsohns] would ask the Court to do." As previously indicated, the house was never actually sold at a foreclosure sale, but rather by mutual agreement of the parties on the open market.

{15}  In addition to foreclosure, the Judgment and Decree of Foreclosure entitled the Springers, individually, to recover from sale proceeds the principal and interest they were owed on the note from the date they took an assignment from the bank, December 27, 1995, to the date of sale, October 9, 1998. The principal has now been paid. The mortgage note interest, reportedly exceeding $87,000 at the time of oral argument, enjoys the same priority claim as the principal with respect to the net proceeds presently held in escrow.[1] Payment of that interest will leave little of the net proceeds available to satisfy the Springer Group's judgment, thereby exposing the Wittelsohn's to the possibility of a deficiency judgment against them personally. Thus, the Wittelsohns mount one last challenge to the court's foreclosure decree.

{16}  At oral argument, the Wittelsohns contended that the Springers should not recover interest on the note from sale proceeds, because in the construction contract the Springer Group alone agreed to assume the risk of borrowing funds to construct the house, which includes the risk of delays and additional interest, just as in this case. However, that risk was limited to the period of construction. It did not include the period thereafter when the Wittelsohns wrongfully refused to close on the sale. In its judgment, the court limited the recoverable interest to that incurred after the Springers took an assignment of the note; interest accruing on

the note before the date of breach was not awarded. Therefore, the court did not relieve the Springer Group from its assumed risk; it correctly limited the risk to that assumed.

{17}  In addition, we fail to see any prejudice to the Wittelsohns from the court's award of interest on the note, which in this case was recoverable only from sale proceeds. The Wittelsohns were not made personally liable for interest on the note, but they could have been. Even though they were not parties to the note, under New Mexico law the court could have made the Wittelsohns personally liable for the additional interest the Springer Group incurred on the note to the Springers as consequential damages for the Wittelsohns' breach of the construction contract; as "damages flowing naturally from the breach." *Shaeffer v. Kelton*, 95 N.M. 182, 187, 619 P.2d 1226, 1231 (1980). The Springer Group requested such personal liability in its complaint, but the court fashioned relief in a manner less onerous to the Wittelsohns. Thus, the Wittelsohns are in no position to complain about mortgage interest that will be paid from foreclosure sale proceeds, when it could have been their personal liability as well.

### The Springer Group Is Entitled to Collect Any Deficiency Against Personal Assets

{18}  After recognizing the Wittelsohns' $91,289.35 interest in the property, the trial court held the Wittelsohn's liability to the Springer Group shall not exceed their $91,289.35 interest in the property and the Springer Group shall not be entitled to a deficiency claim against the Wittelsohns "outside of [the] case." The Springer Group argues that the trial court erred in rejecting a deficiency judgment against the Wittelsohns personally, and we agree.

{19}  A judgment is not a specific lien upon any particular real estate but rather a general lien upon all of the judgment debtor's real property. *See* NMSA 1978, § 39–1–6 (1983); 1 Henry C. Black, *A Trea-*

---

1.  At oral argument the Springers claimed a right to additional mortgage interest from the date of the sale to the date of oral argument totaling

$6280.58.  However, the court decree only awards interest until the date of the sale of the property.

tise on the Law of Judgments § 401, at 634 (2d ed.1902) [hereinafter Black]. As a general rule, the court cannot control or restrict the enforcement and collection of a judgment to any specific fund or property, at least not without some specific authority on point. *See* Black, *supra*, § 402, at 634–35. According to our Supreme Court, disallowing a deficiency judgment without any evidence in the record to support the decision, is arbitrary and constitutes reversible error. *See Federal Land Bank v. Jungbluth*, 40 N.M. 298, 298, 58 P.2d 1203, 1204 (1936); *see also First Nat'l Bank v. Haymond*, 89 Utah 151, 57 P.2d 1401, 1403–04 (1936) (discussing the authority to deny a deficiency judgment when mortgaged property has been sold at an inadequate price); *cf. Blaine Bank v. Haugen*, 260 Mont. 29, 858 P.2d 14, 18–19 (1993) (affirming refusal to preclude a deficiency judgment when debtors provided no basis for precluding deficiency judgment). The Wittelsohns conceded at oral argument that they are not aware of any evidence in the record that would justify the trial court in restricting how the Springer Group enforces its judgment. The Wittelsohns also failed to cite any legal authority to support what the trial court did in this case.

{20} The Wittelsohns would have us conjecture that perhaps the trial court was exercising its equitable discretion by limiting their exposure to the $91,289.35 that the Wittelsohns had invested in the construction contract. But they concede, as they must, that the record is silent as to whether the trial court was exercising its discretion in this manner and why. We are mindful that "[a]lthough the decision of whether equitable relief should be granted is within the sound discretion of the trial court, '[s]uch discretion is not a mental discretion to be exercised as one pleases, but is a legal discretion to be exercised in conformity with the law.' " *Nearburg v. Yates Petroleum Corp.*, 1997–NMCA–069, ¶ 32, 123 N.M. 526, 943 P.2d 560 (quoting *Continental Potash, Inc. v. Freeport–McMoran, Inc.*, 115 N.M. 690, 697, 858 P.2d 66, 73 (1993)). The court's duty is to enforce the terms of a contract unless it is unconscionable or otherwise unenforceable, neither of which were alleged in this case. *See id.* ¶ 31.

{21} The default provisions of the construction contract clearly authorize the non-breaching party to sue for specific performance and damages. The parties did not insert any special limitation on damages or the source of their collection. As a matter of law, the trial court could not interfere with the bargain that the parties struck in their own contract, unless excused by some equitable principle. *See id.* We have not been advised of any evidence in the record that would support such an equitable principle in this case, nor are we aware of any. Therefore, we hold that the court erred as a matter of law in limiting enforceability of the Springer Group's judgment to the Wittelsohns' $91,289.32 equitable interest in the net proceeds. We reverse that portion of the judgment and hold as a matter of law that after exhausting what is left of the net proceeds, the Springer Group may satisfy the unpaid portion of its judgment against personal assets of the Wittelsohns as otherwise authorized by law.

**The Springer Group Has a Right to Execute Its Breach of Contract Judgment Against the Wittelsohns' $91,289.35 Interest in the Sale Proceeds**

{22} The Springer Group challenges, as an error of law, the court's apparent protection of the Wittelsohns' interest in the sale proceeds by giving it a priority over the Springer Group's judgment. We disagree that the court intended any such thing. The court was not protecting the Wittelsohns' interest from the Springer Group's judgment, as even the Wittelsohns appeared to agree at oral argument. The trial court indicated in its Judgment and Decree that the Springer Group's judgment would attach to the Wittelsohns' interest when it held that the Wittelsohns' interest in the sale proceeds was subject to elimination in the foreclosure and that the Wittelsohns' liability to the Springer Group would not exceed their $91,289.35 interest in the property. At the presentment hearing, the court indicated that the Springer Group could recover its judgment "from any monies due and owing to the Wittelsohns." *See Ledbetter v. Webb*, 103 N.M. 597, 603, 711 P.2d 874, 880 (1985) (stating appellate court may examine the trial

court's comments for clarification). The court's statement that the Springer Group may collect its judgment against the Wittelsohns' interest in the sale proceeds is consistent with the law of judgments. The Springer Group acquired a judgment lien against all the Wittelsohns' property, including their equitable interest in the Placitas property and the sale proceeds. *See* NMSA 1978, § 39–4–13 (1933); *see also* § 39–1–6; *Armstrong v. Csurilla*, 112 N.M. 579, 586–87, 817 P.2d 1221, 1228–29 (1991) (recognizing a money judgment may constitute a lien against the judgment debtor's property and be enforced or foreclosed in a single proceeding). The court could not restrict the enforcement or collection of the judgment absent some specific authority to do so. *See* Black, *supra,* § 402, at 634–35. Additionally, the Wittelsohns never challenged, either at the presentment hearing or on appeal, the Springer Group's claim that its judgment may be satisfied from their interest in the sale proceeds, and they concede that their interest is not protected from the judgment. Therefore, we affirm the court's determination that the Wittelsohns' interest in the proceeds from the sale of the property is subject to the Springer Group's breach of contract judgment, including interest on that judgment.

### The Springers Are Entitled to Attorney Fees but Only Those Reasonably Incurred in the Foreclosure

{23} The Springers argue that they are entitled to attorney fees because the note and mortgage provided for fees in the event of a default. As a general rule, litigants are responsible for their own attorney fees absent statutory authority or some other authority such as a contract allowing such fees. *See Montoya v. Villa Linda Mall, Ltd.,* 110 N.M. 128, 129, 793 P.2d 258, 259 (1990). The construction contract between the Wittelsohns and the Springer Group did not provide for attorney fees. The mortgage note between the Springer Group and the bank did provide for attorney fees, but as we have seen, the Wittelsohns were never parties to that transaction. The trial court denied the Springers' request for attorney fees, ostensibly on the basis of these two factors.

{24} The Springers present a novel argument that they are entitled to attorney fees,

not against the Wittelsohns personally, but in rem against the proceeds of the foreclosure sale. We agree to a limited extent. *See generally LaFarr v. Scribner,* 150 Vt. 159, 549 A.2d 651, 652 (1988) ("It is axiomatic that a foreclosure action is an action in rem . . . ."); *State ex rel. Biddle v. Superior Court,* 63 Wash. 312, 115 P. 307, 308 (1911) ("The foreclosure was a proceeding in rem."); 1 Leonard A. Jones, *A Treatise on the Law of Mortgages of Real Property* § 442, at 568–69 (8th ed.1928) (stating that a provision for compensation for expenses incurred by a default is a proper addition to the mortgage debt and part of the judgment which the mortgagee is entitled). When the Springers took assignment of the bank's position as lender and mortgagee, they were entitled to sue to foreclose in the event of default, just as the bank would have been. If the bank, as obligee, had filed this lawsuit against the Springer Group, reasonable attorney fees would have been recoverable from the foreclosure proceeds. So too, the Springers, as obligees, were contractually entitled to reasonable attorney fees incurred in the course of prosecuting the foreclosure action, and those fees, no different from the principal and interest on the loan, were recoverable from foreclosure proceeds. Of course, the fees are not recoverable against the Wittelsohns personally, and the Springers make no such claim.

{25} However, we do recognize that this claim, unlike a conventional foreclosure, was accompanied by the Springer Group's suit on the construction contract, for which attorney fees were not awardable. Therefore, on remand the trial court must scrutinize any claim to ensure that attorney fees were fairly incurred solely in the prosecution of the foreclosure. Sound judicial discretion will be the guide for the trial court as it subjects any such claim to exacting review. We hold only that the court may not categorically deny a valid claim for fees based on contract.

### CONCLUSION

{26} We affirm the court's foreclosure of the Placitas property. We construe the court's judgment as making the equitable claim of the Wittelsohns subject to the judg-

ment of the Springer Group and available for execution and satisfaction, in whole or in part, with respect to the Springer Group's judgment lien. We reverse the trial court's restriction with respect to a deficiency for the Springer Group, after the net proceeds from the sale are exhausted. We also reverse the categorical denial of attorney fees for the Springers individually that were incurred in the foreclosure proceedings and that are collectible solely from sale proceeds. We remand for further proceedings.

{27}   **IT IS SO ORDERED.**

WECHSLER and BUSTAMANTE, JJ., concur.