2005-NMCA-098

117 P.3d 919

**Paul D. MANNICK and Kathy P. Mannick, Plaintiffs–Appellees,**

v.

**Robin G. WAKELAND, Defendant–Appellant.**

**Coppler & Mannick, P.C., Paul D. Mannick, and Kathy P. Mannick, Plaintiffs–Appellees,**

v.

**Robin G. Wakeland, Defendant–Appellant.**

**Nos. 24,078, 24,280.**

Court of Appeals of New Mexico.

Certiorari Granted, No. 28,913, Jan. 4, 2005.

Aug. 24, 2004.

Paul D. Mannick, Santa Fe, NM, for Appellees.

Robin G. Wakeland, Santa Fe, NM, Pro Se Appellant.

## OPINION

PICKARD, Judge.

{1} This appeal involves two related cases: a foreclosure case, in which Paul and Kathy Mannick (the Mannicks) foreclosed on a judgment lien against Robin Wakeland's (Wakeland) property, and a waste case, in which the Mannicks and their successor in interest, Coppler & Mannick, P.C., sought to recover damages from Wakeland for actions she took to devalue the property that was the subject of the foreclosure case. The district court denied Wakeland's motion to enter judgment on an earlier mandate from this Court in the foreclosure case, in which she was awarded a $30,000 homestead exemption, until there had been a hearing in the pending waste case. Wakeland was found to have committed waste, and in addition to damages, the district court issued an order equitably estopping her from pursuing the homestead exemption to which she was legally entitled in the foreclosure case. We consolidate these cases on appeal to consider the issue of the district court's equitable powers, holding that while equitable estoppel was not applicable to this case, equity demands that the court supervise the payments so that Wakeland is required to at least partially satisfy the Mannicks' judgment against her.

{2} We also consider the other issues raised by Wakeland, which are (1) that this Court does not have the authority to consolidate the cases on appeal, (2) that the district court did not have a basis for finding that she had committed voluntary waste, (3) that the district court must have concluded that she

committed prima facie tort and that the evidence did not support this conclusion, (4) that the court did not have the authority under the Uniform Fraudulent Transfer Act (the Act), NMSA 1978, §§ 56–10–14 to –25 (1989), to invalidate the Declaration of Covenants and Restrictions (the Declaration) that she filed or award damages in the form of attorney fees related to clearing title, (5) that she should win on appeal because Appellees have conceded certain issues, and (6) that she is entitled to costs on appeal. We affirm as to all of these issues, except as to a subissue relating to costs on a prior appeal, and we order each party to bear its own costs on this appeal.

## FACTS AND PROCEDURAL HISTORY

{3} At the outset, we note that in order to describe the background of this case, we take judicial notice, as Wakeland requests, of the records on file in this Court. *See State v. Turner,* 81 N.M. 571, 576, 469 P.2d 720, 725 (Ct.App.1970). The parties also rely on these documents to lend clarity to their arguments. In addition, all of the records we notice were before the district court. *See Gonzales v. Gonzales,* 116 N.M. 838, 840–41, 867 P.2d 1220, 1222–23 (Ct.App. 1993) (indicating that appellate court will consider on appeal matters that were before the district court when it ruled).

{4} The Mannicks foreclosed on a house owned by Wakeland in a case that came to this Court in 2001. We refer to this case as the foreclosure case. In our 2002 opinion in the foreclosure case, we affirmed the district court's decision in most respects, but we held that Wakeland was entitled to a $30,000 homestead exemption. *Mannick v. Wakeland,* No. 21,989, slip op. at 8–9 (N.M.Ct.App. Jan. 4, 2002).

{5} During the pendency of the foreclosure case, the Mannicks discovered that Wakeland had severely damaged the property that was the subject of the foreclosure and that its value had been considerably diminished. Among other things, Wakeland had covered the walls with graffiti, pounded large holes in the walls, and removed sinks, cabinets, water heaters, heaters, window cranks, lighting fixtures, and interior doors. Wakeland also filed the Declaration, which purported to be a covenant that permanently severed the domestic water rights from the property and kept them for herself and her descendants.

{6} In Wakeland's appeal of the foreclosure judgment, the Mannicks asked this Court to "determine whether and to what extent [Wakeland]· ha[d] already received her homestead exemption" through this waste. *Id.* slip op. at 2. We refused, holding that "[a]ny separate claims [the Mannicks] wish to bring against [Wakeland] for property damages should be brought in the district court." *Id.* The Mannicks and Coppler & Mannick, P.C., the Mannicks' successor in interest to the property, then brought a claim for voluntary waste and fraudulent transfer of property against Wakeland on April 15, 2002. We refer to this case as the waste case.

{7} The district court, faced with both our mandate in the foreclosure case and the pending waste case, attempted to resolve any conflict by adding a paragraph to the judgment in the foreclosure case that read, "The Defendant Robin Wakeland is entitled to her homestead exemption, subject to the judgment of this Court in [the waste case]." Wakeland appealed this judgment, and we reversed, holding that such a set-off would be the equivalent of garnishing the exemption, which is not permitted under the homestead exemption statute. NMSA 1978, § 42–10–9 (1993); *Mannick v. Wakeland,* No. 23,517, slip op. at 5 (N.M.Ct.App. Jan. 28, 2003). In denying a subsequent motion for reconsideration by directly affected non-party Coppler & Mannick, P.C., we directed Coppler & Mannick to "bring its claims for waste and possibly obtain a judgment against Wakeland independent of the set-off that is the subject of this proceeding." Part of our rationale was that a judgment in the waste case was only a possibility. In addition, because the waste case had not yet been tried before the lower court, it was a collateral matter, not then part of the district court's records.

{8} Wakeland returned to the district court, and in March 2003, she requested a hearing for judgment on the mandate in the foreclosure case, with the goal of obtaining her homestead exemption. Meanwhile, the waste case was proceeding in the district court. Faced with the same situation as the

previous district judge, the new district judge assigned to the case denied Wakeland's motion for a hearing, deciding that the matter of the judgment in the foreclosure case would be addressed at the April 2003 trial in the waste case. Wakeland appealed directly from this judgment, leading to the current appeal numbered 24,078, which is the continuation of the foreclosure case.

{9} The April 2003 trial in the waste case proceeded as planned. Paul Mannick testified as to the property damage and other attempts that Wakeland made to reduce the value of the property. Another witness testified about the work that he did on the property to repair the damage. Wakeland made various arguments but did not present testimony. The district court found that Wakeland had maliciously and wilfully destroyed the property and intended to violate the rights of the Mannicks and Coppler & Mannick. The court awarded the Mannicks and Coppler & Mannick $34,100 in actual damages and $10,000 in punitive damages. It also voided the Declaration.

{10} The district court also addressed the foreclosure case. Recognizing our mandate in the foreclosure case, the district court concluded that "under these particular and unusual circumstances, it would be unjust and inequitable to allow Ms. Wakeland to pursue any legal action against the [Mannicks] to recover the $30,000 homestead exemption and that ... Wakeland would be unjustly enriched by any such legal action." Accordingly, the district court decided that Wakeland would be "equitably estopped from pursuing the $30,000 to which she was legally entitled and that would, except for the extraordinary circumstances in this case, otherwise have been paid to ... Wakeland for her homestead exemption." Wakeland appealed from this order as well, leading to the current appeal numbered 24,280, which is the continuation of the waste case.

## 1. Consolidation on Appeal and Related Issues

{11} We consolidate these cases on appeal pursuant to Rule 12–202(F)(2) NMRA, which gives this Court the power to consolidate cases on its own motion. This power is independent of the district court's power to consolidate cases. Contrary to Wakeland's arguments, we do not recognize Rule 12–210(B)(3) NMRA as creating a substantive right to a panel of randomly chosen judges, and even if that right does exist generally, the consolidation of cases authorized by Rule 12–202(F)(2) would be an exception to it. Accordingly, we deny both of Wakeland's motions to vacate the notices of submission, showing that both cases were assigned to the same panel.

{12} Wakeland argues that this Court cannot consider facts proven in the waste case in its determination of the foreclosure case. We do not see any basis for this concern. As we discuss below, the sole issue on appeal of the foreclosure case is whether the judgment in the waste case can estop Wakeland from collecting the amount due to her. Therefore, we can use the factual record in the waste case to decide the propriety of that judgment, and we need only to consider legal principles in deciding whether the waste judgment can affect the foreclosure judgment. As is also clear from this discussion, the cases do have common issues that lend themselves to consolidation.

## 2. Waste

{13} Wakeland challenges the district court's conclusion that she committed voluntary waste, arguing that New Mexico does not recognize the tort of voluntary waste and that any claim of waste must be predicated on a joint tenancy or a contractual relationship. We review these questions of law de novo. *Fernandez v. Walgreen Hastings Co.*, 1998–NMSC–039, ¶ 1, 126 N.M. 263, 968 P.2d 774.

{14} Our starting point is the principle that New Mexico recognizes common law causes of action unless they are overruled or abrogated by statute. *Gonzalez v. Whitaker*, 97 N.M. 710, 714, 643 P.2d 274, 278 (Ct.App. 1982). At common law, waste had its roots in feudalism, where it "performed the important function of defining the extent of occupants' rights of use and the consequences of misuse." 8 David A. Thomas, *Thompson on Real Property* § 70.01, at 239 (Thomas

ed.1994) (hereinafter *Thompson* ). In America, the cause of action evolved to become less harsh, requiring only single damages as opposed to higher damages and possible forfeiture. *Id.* While waste may be considered a tort, it is traditionally categorized as a property-based cause of action because it requires both the wrongdoer and the claimant to have a particular relationship to the property. *Thompson,* § 70.04, at 241–42. Wakeland does not indicate and we do not find any statute overruling or adversely affecting the availability of this cause of action today.

■ {15} Through a claim of waste, "any concurrent non-possessory holders of an interest in land are enabled to prevent or restrain harm to land committed by persons in possession." *FDIC v. Mars,* 821 P.2d 826, 831 (Colo.Ct.App.1991). Waste generally has three elements:

1. There must be an act constituting waste. [This means there must be an act constituting the destruction, misuse, alteration, or neglect of premises.]
2. The act must be done by one legally in possession.
3. The act must be to the prejudice of the estate or interest therein of another.

*Oquirrh Assocs. v. First Nat'l Leasing Co.,* 888 P.2d 659, 664 (Utah Ct.App.1994); *accord Thompson,* § 70.05, at 242–43.

{16} Wakeland is incorrect to state that New Mexico does not recognize the claim of waste. In *Blake v. Hoover Motor Co.,* 28 N.M. 371, 373–74, 212 P. 738, 738–39 (1923), our courts followed the American trend and rejected the English common law rule that a tenant is liable to a landlord for treble damages in a waste case. Our Supreme Court felt this rule was unduly harsh and outdated, and in abolishing treble damages the Court noted that the English rule "has given way to and been superseded by the action for the recovery of single damages." *Id.* at 374, 212 P. at 739. This indicates that it was not the action that was abolished, but merely the treble damages rule.

■ {17} Wakeland's second legal argument appears to be based on the element of waste pertaining to the status of the claimant, who must have a vested interest in the property. *Mars,* 821 P.2d at 831. In the present case, the actions constituting waste occurred before January 10, 2001, the date by which Wakeland had to vacate the property. Before this time, Wakeland owned the property and the Mannicks had a lien on it that had been foreclosed as of December 1, 2000. We hold that this interest was sufficient to enable the Mannicks and their successor in interest, Coppler & Mannick, to maintain an action for waste. *See State ex rel. Tillman v. Dist. Ct. of Tenth Judicial Dist.,* 101 Mont. 176, 53 P.2d 107, 111 (1936) (holding that the owner of a lien against a specific piece of property can maintain a waste action against the owner of that property).

■ {18} To the extent that Wakeland challenges the sufficiency of evidence to sustain the waste decision, we hold that this is also without merit. We review to determine whether the law was correctly applied to the facts, viewing the evidence in the light most favorable to the prevailing party and disregarding all evidence and inferences to the contrary. *Golden Cone Concepts, Inc. v. Villa Linda Mall, Ltd.,* 113 N.M. 9, 12, 820 P.2d 1323, 1326 (1991). The district court found that Wakeland had done a variety of things to intentionally and maliciously decrease the value of the property including filing the Declaration, removing most of the fixtures from the property, making large holes in the interior walls, and painting the windows. All of these facts and the damages stemming therefrom were supported by Paul Mannick's testimony and the testimony of Louis Chavez, who had done the repairs to the premises, as well as by documentary evidence of the Declaration and the cost of repairs. We hold that this evidence was sufficient to support the conclusion that Wakeland committed voluntary waste through the intentional destruction, misuse, and alteration of the premises.

{19} To the extent that Wakeland argues that she did not waste the property to which the lien attached because the lien attached only to the land, we disagree. As a general proposition, real property includes structures and fixtures, which the undisputed evidence shows Wakeland damaged. *See State v.*

*Ruiz,* 94 N.M. 771, 779, 617 P.2d 160, 168 (Ct.App.1980) (indicating that lands includes buildings and fixtures and is synonymous with real property), *superceded by statute on other grounds as stated in State v. McCormack,* 101 N.M. 349, 682 P.2d 742 (Ct.App. 1984); *Cutter Flying Serv., Inc. v. Prop. Tax Dep't,* 91 N.M. 215, 221, 572 P.2d 943, 949 (Ct.App.1977) (opinion of Hernandez, J.) (indicating that real property includes structures, fixtures, and improvements).

### 3. Prima facie tort

{20} Because we hold that the district court properly found that Wakeland committed voluntary waste and because the district court judgment did not mention prima facie tort at any time, we do not agree with Wakeland that damages were awarded under a prima facie tort theory. We need not discuss Wakeland's arguments pertaining to prima facie tort any further.

### 4. Declaration of Covenants and Restrictions

{21} Wakeland argues that there are no findings to support the decision to void the Declaration under the Act, Sections 56–10–14 to –25. The Act defines one type of fraudulent transfer as a transfer made by a debtor "if the debtor made the transfer or incurred the obligation . . . with actual intent to hinder, delay or defraud any creditor of the debtor." Section 56–10–18(A).

{22} Wakeland asserts that the Declaration is not covered under the Act as a transfer and that voiding the Declaration was improper as a matter of law. As issues of statutory interpretation, we review these arguments de novo. *Morgan Keegan Mortgage Co. v. Candelaria,* 1998–NMCA–008, ¶ 5, 124 N.M. 405, 951 P.2d 1066. We disagree.

{23} The Act defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance." Section 56–10–15(L). A real property transfer is complete under the Act when "a good-faith purchaser of the asset from the debtor against whom applicable law permits the transfer to be perfected cannot acquire an interest in the asset that is superior to the interest of the transferee." Section 56–10–20(A)(1).

{24} The Declaration that Wakeland filed purports to restrict the "beneficial use of any water and pumping of any underground water" on the property to use by Wakeland for her lifetime and to her descendants after her death. "Water rights are real property rights that are generally tied to specific land." *Elephant Butte Irrigation Dist. v. Regents of N.M. State Univ.,* 115 N.M. 229, 238, 849 P.2d 372, 381 (Ct.App. 1993). The goal of the Declaration was to prevent any person, including a subsequent purchaser of the property, from using the water rights appurtenant to the property. Specifically, were this covenant to be effective, the Mannicks could not acquire an interest in the water rights superior to the interest of Wakeland and her descendants. Although flaws in the Declaration may have rendered it void on other grounds, the circumstances surrounding its execution satisfy the elements of a fraudulent conveyance, making it voidable under the Act. *See* § 56–10–21 (including among the remedies of creditors avoidance of the transfer or obligation and "any other relief the circumstances may require").

{25} Wakeland also appears to challenge the sufficiency of evidence to support the conclusion that the transfer was fraudulent under the Act. Initially, we note that "findings are sufficient where they justify the judgment, though they intermingle matters of fact and conclusions of law." *Watson Land Co. v. Lucero,* 85 N.M. 776, 777, 517 P.2d 1302, 1303 (1974). The district court made findings that the Declaration purported to convey the water rights appurtenant to the property for Wakeland's life and to her descendants at her death, that the water had beneficially served the property prior to the purported conveyance, and that Wakeland "had the actual intent to hinder, delay or defraud the claimants in the foreclosure lawsuit." These findings were supported by the Declaration itself and the testi-

mony of Paul Mannick, who explained how he discovered the Declaration and the extensive legal work that he had to undertake to clear the title because of it. Wakeland offered no alternative explanation of why she would file the Declaration apart from the intent to hinder, delay, and defraud. We hold that this evidence and these findings are adequate to support the conclusion that the Declaration was voidable under the Act.

{26} Wakeland also argues that the district court erred in awarding the attorney fees incurred to clear title of this Declaration, contending that it violates the "American rule" on attorney fees. However, the fees awarded were not fees incurred in this case, but instead were incurred in an ancillary case. *See First Nat'l Bank v. Diane, Inc.*, 102 N.M. 548, 555, 698 P.2d 5, 12 (Ct. App.1985).

## 5. Equitable Estoppel

{27} The Mannicks do not contest the determination that Wakeland is legally entitled to a homestead exemption in the foreclosure case. We have rejected Wakeland's arguments regarding the validity of the liability and damage determinations in the waste case. There is, therefore, only one remaining issue that is determinative of both cases. If the district court properly applied the doctrine of equitable estoppel in the waste case, then the decision not to enter an amended judgment in the foreclosure case was appropriate. If the district court did not properly apply equitable estoppel, then the equitable estoppel portion of the waste case and the decision in the foreclosure case must be reversed. "The question of whether, on a particular set of facts, the district court is permitted to exercise its equitable powers is a question of law, while the issue of how the district court uses its equitable powers to provide an appropriate remedy is reviewed only for abuse of discretion." *United Properties Ltd. Co. v. Walgreen Props., Inc.*, 2003–NMCA–140, ¶ 7, 134 N.M. 725, 82 P.3d 535. We hold that equitable estoppel was improperly applied in this case.

{28} We acknowledge that there is broad language in the authorities describing equitable estoppel as preventing "a party

from asserting rights when his own conduct renders that assertion contrary to equity and good conscience." 28 Am.Jur.2d *Estoppel and Waiver* § 28, at 454–55 (2000). However, the doctrine of equitable estoppel is considerably more limited; it is aimed at preventing a party from benefitting from deception or misleading conduct. "[A] party who knows or should know the truth is absolutely precluded ... from denying, or asserting the contrary of, any material fact which, by his words or conduct, affirmative or negative, intentionally or through culpable negligence, he has induced another ... to believe and act upon them thereby...." *Id.* at 455. The conduct of the party to be estopped "must be something which amounts either to a representation or a concealment of the existence of facts; and these facts must be material to the rights or interests of the party affected by the representation or concealment." 3 John Norton Pomeroy, *A Treatise on Equity Jurisprudence* § 808, at 206–07 (1941).

{29} The notion of preventing deceit and deceitful conduct is the basis for New Mexico's formulation of the equitable estoppel doctrine. In order to apply equitable estoppel, the district court must find certain factual predicates with regard to the party against which estoppel is asserted, who in this case is Mannick. These requirements are:

(1) [c]onduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts.

*Mem'l Med. Ctr., Inc. v. Tatsch Constr., Inc.*, 2000–NMSC–030, ¶ 9, 129 N.M. 677, 12 P.3d 431 (quoting *Lopez v. State*, 1996–NMSC–071, ¶ 18, 122 N.M. 611, 930 P.2d 146). The district court must also establish certain facts with respect to the party seeking equitable relief, which in this case is the Mannicks and Coppler & Mannick. These facts are:

(1) [l]ack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Id.*

 {30} In the present case, the district court clearly disapproved of Wakeland's egregious conduct in destroying the property and attempting to use the legal system to encumber the title, and we share this sentiment. However, we are unable to discern any deception or deceptive conduct on which the Mannicks or Coppler & Mannick relied to their detriment that pertains to the homestead exemption, nor do we find any reference to any such deceptive conduct in the district court's findings and conclusions.

{31} The parties do not indicate and the record is devoid of any representations in which Wakeland asserted that the Mannicks would be able to fully recover the amount that Wakeland owed them by foreclosing on the home. There is no indication that Wakeland ever represented through words or conduct that the house was in any particular condition. In fact, Wakeland established at trial that Paul Mannick had no prior knowledge of the condition of the interior of the property on which he relied in foreclosing on it. Thus, we find no representations or conduct that could form the basis of estoppel in this regard.

 {32} There is also no indication that Wakeland was deceptive about the homestead exemption. The purpose of the homestead exemption is to prevent debtors from becoming destitute. *Morgan Keegan Mortgage Co.*, 1998–NMCA–008, ¶ 7, 124 N.M. 405, 951 P.2d 1066. A party claiming a homestead exemption need not prove anything with regard to his or her destitution, nor are there any conduct requirements in the New Mexico homestead exemption statute besides those necessary to establish that the property is a homestead. *See* § 42–10–9. There is no basis for estoppel here either.

{33} Without the element of false representation or concealment of material facts, we cannot uphold the district court's application of equitable estoppel. Because estoppel was improper, the district court was not within its powers to refuse or delay the entry of judgment in the foreclosure case. On that basis, we reverse the district court's decision in the foreclosure case and remand for entry of judgment. We also reverse the equitable estoppel portion of the decision in the waste case. Because we reverse this portion of the judgment, we need not entertain Wakeland's arguments about access to the courts, subject matter jurisdiction, or double remedies. *See Prieskorn v. Maloof*, 1999–NMCA–132, ¶¶ 17–18, 128 N.M. 226, 991 P.2d 511 (stating that the court need not reach additional issues that would not impact the outcome of the case even if decided in favor of the appellant).

## 6. Equitable Power of the Courts

{34} Despite our holding that equitable estoppel was improper in this case, we are swayed by the district court's sense that it would be inherently unjust to allow Wakeland to collect $30,000 from the Mannicks, while the Mannicks and Coppler & Mannick would have to endure another lengthy round of litigation in order to collect their $44,100 judgment from Wakeland. In the past, we have invoked the maxims of equity that enable and compel a court to do justice.

> Equity is reluctant to permit a wrong to be suffered without remedy. It seeks to do justice and is not bound by strict common law rules or the absence of precedents. It looks to the substance rather than the form. It will not sanction an unconscionable result merely because it may have been brought about by means which simulate legality. And once rightfully possessed of a case it will not relinquish it short of doing complete justice.

*Ontiveros Insulation Co. v. Sanchez*, 2000–NMCA–051, ¶ 13, 129 N.M. 200, 3 P.3d 695 (internal quotations marks and citations omitted). As we did in *Ontiveros, id.,* here the facts of the present case require us to examine the equities more closely.

{35} This case began with the Mannicks obtaining a judgment against Wakeland for $87,895.08, which began accruing interest in October 1995. Attempting to collect that

judgment, the Mannicks obtained a lien against Wakeland's property and attempted to foreclose on it in a legal proceeding that began in 1996 and is still proceeding, which appears to have cost over $45,000 in legal fees. Even after receiving the proceeds from the foreclosure, there was still a significant deficiency between what the Mannicks had received and what Wakeland owed them. After the foreclosure, the Mannicks had to sell the property to Coppler & Mannick in order to be able to afford to do the necessary repairs to make the house habitable after Wakeland engaged in her destructive acts. Then Paul Mannick discovered that Wakeland had filed the Declaration, requiring him to undertake more legal work to undo that impermissible covenant, in addition to paying for repairs to the property at a cost of $13,500. As the Mannicks argue, and Wakeland does not refute, there was no motivation for Wakeland to damage the property and to attempt to encumber the property except to injure the Mannicks and Coppler & Mannick. Meanwhile, the equities weighing in on Wakeland's side were minimal. The record does not indicate that she was harmed or mistreated by the Mannicks in any way. It is not difficult to perceive why the district court felt that Wakeland's actions were malicious and unjust and to see why the district court was concerned about forcing the Mannicks to pay Wakeland while Wakeland continued to owe the Mannicks and Coppler & Mannick so much herself.

{36} The well-established principle that equity must act in conformity with the law limits our ability to correct the injustice in this case. *Springer Group, Inc. v. Wittelsohn*, 1999–NMCA–120, ¶ 20, 128 N.M. 36, 988 P.2d 1260. When we awarded Wakeland the homestead exemption and held that it could not be the subject of an off-set in her earlier appeal, we noted that money claimed by a debtor as an exemption is generally not available for other purposes like garnishment or attachment. Section 42–10–9; *see Laughlin v. Lumbert*, 68 N.M. 351, 354, 362 P.2d 507, 509 (1961). Under New Mexico law, it appears that once an amount of money has been set aside as a homestead exemption in one case, it is not reachable for garnishment even as part of the execution of a judgment

in a separate case. *See id.* at 354–55, 362 P.2d at 510.

{37} Other states limit the time that money from a homestead exemption can be withheld from creditors based on a fixed period or on the debtor's intent to purchase a new homestead. *See, e.g., Ortale v. Mulhern*, 58 Cal.App.3d 861, 130 Cal.Rptr. 277, 279 (Ct. App.1976) (recognizing California's fixed six-month period during which homestead exemption monies are exempt from creditors' claims); *Harrell v. Bank of Wilson*, 445 P.2d 266, 270 (Okla.1968) (recognizing Oklahoma's homestead exemption law requiring a good faith intent to purchase a new home within a reasonable time). However, New Mexico law does not contain any such limits, which, combined with the absence of any need to demonstrate that the person claiming the exemption is insolvent or otherwise destitute, makes our creditors especially vulnerable to the debtor who uses the homestead exemption as a perpetual shield of assets. In a case like this, where the debtor has also maliciously destroyed the property and continues to have judgments entered against her in favor of the creditor, the potential for misuse of the exemption is especially stark.

{38} Although it cannot prevent Wakeland from collecting her sum, the district court may use its equitable powers to supervise the payments so that Wakeland receives her money and is required to pay the Mannicks their money contemporaneously. *See Segal v. Goodman*, 115 N.M. 349, 355–56, 851 P.2d 471, 477–78 (1993) ("[C]ourts have a general supervising control over the processes of execution, and for the purpose of preventing injustice, an execution is within the inherent equitable control of the court." (internal quotation marks and citation omitted)). The district court may choose to do this through the appointment of a limited receiver or through an offset to the waste judgment. This would not be contrary to our earlier orders, grounded as they were on the fact that the waste case had not yet been litigated. Thus, the Mannicks would be assured of at least collecting $30,000 of their judgment in a timely fashion, with other legal means being available to collect the deficien-

cy. *See* NMSA 1978, § 39–1–6 (1983) (judgment liens); NMSA 1978, § 39–4–3 (1901) (execution on chattel and garnishment). While this may appear similar to a garnishment, the extraordinary circumstances of this case require equitable intervention to assure that justice is done.

### 7. Appellate Procedure

▆▆▆▆ {39} Citing *Hall v. Hall,* 114 N.M. 378, 838 P.2d 995 (Ct.App.1992), Wakeland argues at many places in her briefs that Appellees have conceded one issue or another by failing to brief it or by failing to cite authorities. The rule on which Wakeland relies, however, applies to appellants and not appellees. The rule is an outgrowth of the procedural posture of cases on appeal in which every reasonable presumption is indulged in favor of the proceedings below, and the burden is upon the appellant to clearly show error. *See Clayton v. Trotter,* 110 N.M. 369, 371, 796 P.2d 262, 264 (Ct.App. 1990). In contrast, an appellee does not even have to file a brief, and the appellate court will review the case in accordance with the same favorable view of the proceedings below. *Compare* Rule 12–312(A) NMRA (stating that appeal may be dismissed for an appellant's failure to file a brief), *with* Rule 12–312(B) (stating that the case will be submitted on an appellant's brief when an appellee fails to file a brief). We therefore hold that no issues have been conceded.

### 8. Costs on Appeal

▆▆▆ {40} Rule 12–403(A) NMRA allows prevailing parties to recover their costs on appeal unless the court determines otherwise. In this appeal, there are portions of each judgment that are affirmed and portions that are reversed, such that there is no clear "prevailing party." In these situations, we have the authority to mandate that each party should bear its own costs on appeal. *N.M. Right to Choose/NARAL v. Johnson,* 1999–NMSC–028, ¶ 33, 127 N.M. 654, 986 P.2d 450.

{41} Wakeland also contends that costs we ordered in her favor from the prior appeal have not been paid. The $654.04 we previously ordered to be paid should be added to

the $30,000 homestead exemption to which Wakeland is entitled.

### CONCLUSION

{42} The judgment of the district court in *Coppler & Mannick, P.C. v. Wakeland,* No. 24,280, 138 N.M. 113, 117 P.3d 919, 2005 WL 1901684 is affirmed as to liability and damages and is reversed only with respect to the application of equitable estoppel. The case is remanded to the district court to enter a judgment in case D–0101–CV–2002–00786 that finds Wakeland liable for voluntary waste and punitive damages, that entitles the Mannicks and Coppler & Mannick to damages amounting to $44,100, that voids the Declaration of Covenants and Restrictions, and that contains any other provisions that were not challenged on appeal. The order denying Wakeland's motion for judgment on the mandate in *Mannick v. Wakeland,* No. 24,078, 138 N.M. 113, 117 P.3d 919, 2005 WL 1901684 is reversed and remanded for the district court to enter a judgment in case D–0101–CV–1998–00040 that includes a cash payment to Wakeland for $30,654.04. The district court is further ordered to supervise the enforcement of both judgments to assure timely and equitable compliance. Each party shall bear its own costs on appeal.

{43} **IT IS SO ORDERED.**

I CONCUR: MICHAEL E. VIGIL, Judge.

RODERICK T. KENNEDY (concurring in part and dissenting in part).

KENNEDY, Judge (concurring in part and dissenting in part).

{44} While wholeheartedly concurring with the majority in its analysis of the problem in this case, my concurrence reached a screeching halt at the remedy the majority created in paragraph thirty-eight. I therefore respectfully dissent.

{45} "Exemption laws rest entirely on constitutional or statutory grounds" and exist to benefit the debtor. *D'Avignon v. Graham,* 113 N.M. 129, 131–32, 823 P.2d 929, 931–32 (Ct.App.1991). This Court has previously held that the homestead exemption "is clear and unambiguous. Under the rules of statu-

tory construction, legislative intent is determined primarily by the language of the statute itself; words are given their ordinary meaning unless a different intent is clearly indicated. Further, courts must take the statute as they find it and construe it according to the plain meaning of the language employed." *Ruybalid v. Segura*, 107 N.M. 660, 666, 763 P.2d 369, 375 (Ct.App.1988) (internal citations omitted).

{46} The majority concedes that a homestead exemption is not subject to either setoff or garnishment—owing to case law and our previous ruling between these parties. The opinion looks to California and Oklahoma to find limitations on the exemption but also acknowledges that while those two states may have done something, New Mexico's legislature is silent on the subject. Our limitations on the exemption, contained in NMSA 1978, § 42–10–11 (1971), do not help the creditors here, but are entitled to the presumption that they are what the legislature intended to be the exceptions to the exemption in our state. *See Chavez v. Am. Life & Cas. Ins. Co.*, 117 N.M. 393, 396, 872 P.2d 366, 369 (1994) ("The legislature is presumed to know the law, including the laws of statutory construction, when it passes legislation."). We can go no further.

{47} The majority pays lip service to *Laughlin*, 68 N.M. at 354, 362 P.2d at 509, but fails to distinguish why its proposed remedy—appointing a special master to take each dollar that Wakeland receives from her exemption out of Wakeland's hand, and give that dollar to Plaintiffs—is not enough like a garnishment of the exemption to run afoul of existing law. In *Morgan Keegan Mortgage Co.*, 1998–NMCA–008, ¶ 8, 124 N.M. 405, 951 P.2d 1066, we expanded the homestead exemption, but did so stating that the exemption should be liberally construed in favor of the *debtor*. Now, the pendulum swings, carving an equitable exception to the exemption in favor of the creditor. This is contrary to our case law and the policy underlying exemptions. I share the chagrin that Judge Donnelly expressed in his dissent in *Morgan Keegan Mortgage Co.* when he noted that the majority there had created a remedy not contained in the statute, and "permit[ting]

the Debtor to side-step legislative procedures designed to protect both debtors and creditors in mortgage foreclosure proceedings." *Id.* ¶ 20. Seven years hence, we again do damage in the name of equity to the certainty of legislative enactments, and now do the same sort of sidestepping for the creditor. This creates a similarly uncertain future for parties who need to rely on the exemption statute in cases that will undoubtedly follow this one.

{48} For the results of our courts to be predictable, when we find a clear statute, we must follow the mandate the legislature gives us. We cannot adopt a remedy that will encourage arbitrary decisions down the road by trial courts that are allowed to use an idiosyncratic measure like "the law is unfair." Following statutes, as we have pointed out before, may beget an unfair result to parties on either side of the case. *See Williams v. Ashbaugh*, 120 N.M. 731, 734, 906 P.2d 263, 266 (Ct.App.1986) (indicating that if in that case assuming an unfairness existed in the statutory provisions, it "is a situation which calls for legislative therapy and not judicial therapy"). It is a task for legislative action to modify the homestead exemption in our state in a way that can be universally applied. We do not have to create a new remedy to handle this case. Another universally applied statute allows the creditor to keep its judgment alive for fourteen years to exact payment. NMSA 1978, § 37–1–2 (1983).

{49} There well may come a case where the creditor's actions in foreclosing on a judgment lien are as reprehensible as the debtor's in frustrating them. In that instance, the protection of assets afforded debtors by the homestead exemption may well need to apply in full force in a case not very different from this one. The statute itself brooks no speculation about personality or motives of the parties. It only affords a debtor a homestead exemption. Judicially fashioned remedies in the face of a definite statute to abrogate that statute serve no goal of promoting predictable outcomes.

{50} Therefore, though agreeing fully with the majority in this case that Wakeland's actions were egregious and eminently worthy

of the judgment against her for waste of the asset, I would determine that she is entitled to her homestead exemption without its being trammeled by our misguided gutting of the statute's provisions. The Mannicks and their successors should be (albeit unfortunately) compelled to honor the exemption.